**David A. WILLIAMS, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

**No. 95–4019–RDR.**

United States District Court,
D. Kansas.

March 11, 1996.

1374

Roger D. Fincher, Bryan, Lykins & Hejt-manek, P.A., Topeka, KS, for Plaintiff.

Melanie D. Caro, Assistant U.S. Attorney, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an action to review a final decision by the Commissioner of Social Security re-·garding plaintiff's entitlement to disability benefits and supplemental security income (SSI) benefits under the Social Security Act. The parties have filed briefs on the issues raised by this case and the court is now prepared to rule.

Plaintiff filed applications for disability and SSI benefits on September 23, 1992. He alleged that his disability began on August 2, 1987. The applications were denied initially and on reconsideration by the Social Security Administration. On July 19, 1994, following a hearing, an administrative law judge (ALJ) rendered a decision in which he found that plaintiff was not under a disability as defined in the Social Security Act at any time when he met the earnings requirement of the law, or at any time through the date of the decision. Accordingly, the ALJ concluded that plaintiff was not entitled to disability or SSI benefits. On November 10, 1994, after consideration of additional medical evidence, the Appeals Council of the Social Security Administration denied plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

The court's review in this case is narrow. We are limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir.1994). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)). The court may "neither reweigh the evidence nor substitute our judgment for that of the [Commissioner]." *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).

The Secretary has established a five-step evaluation process pursuant to the Social Se-

curity Act for determining whether a claimant is disabled within the meaning of the Act. *See Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir.1988) (discussing five-step disability test in detail). The claimant bears the burden of proving disability through step four of the analysis. *Id.* at 751.

Plaintiff was born on June 19, 1952. He graduated from high school and has taken some business classes since high school. He worked for Fleming Foods as an advertising artist from 1974 until August 1987. He was terminated from that position when the advertising department was closed. He worked as a real estate agent in 1988 and 1989 after obtaining a real estate license. He last worked from February through April 1993 as a microfilm machine operator with the State of Kansas.

The medical records contain entries from 1985 to 1994. There are few records for the period from 1985 to 1991. Most of the entries document the period from 1992 to 1994.

Dr. Sergio Delgado diagnosed plaintiff with Charcot–Marie–Tooth disease in June 1984. This disease involves muscular atrophy, beginning in the muscles supplied by the peroneal nerves and progressing slowly to involve the muscles of the hands and arms. This diagnosis was later questioned by several doctors.

In September 1985, plaintiff was seen at the Shawnee Community Medical Health Center (SCMHC). He sought counseling due to stress and marital problems. He also complained of back problems arising from an automobile accident two years prior. After gaining an admission history, the staff at SCMHC recommended treatment for alcohol abuse.

In June 1987, plaintiff was seen by Dr. Eric Voth for alcoholism. Plaintiff stated he had been drinking three to four drinks a night for many years. He was concerned about his drinking because some lab tests taken last year at Memorial Hospital had shown some liver damage. Plaintiff noted his drinking had caused some marital problems, but it had not affected his work performance. Dr. Voth diagnosed alcoholism and suggested a plan for chemical dependency treatment.

On March 7, 1988, plaintiff was seen by Dr. Laurence Coker. Plaintiff complained of chest congestion. Plaintiff admitted he had been smoking a pack of cigarettes a day since high school. Dr. Coker diagnosed recurrent bronchitis and cigarette abuse. He prescribed Amoxicillin and some cough syrup. Several weeks later, plaintiff stated he was "some better, but still won't go away." Dr. Coker again prescribed an antibiotic.

In July 1989, plaintiff complained of chronic back problems to Dr. Coker. Plaintiff indicated he had had back problems for a number of years, but especially since 1984 when he was involved in an automobile accident. He told Dr. Coker he had seen other doctors and chiropractors about this problem. He noted he had taken a variety of medications and they seemed to help "some." Dr. Coker noted that plaintiff had chronic back problems and some moderate decreased range of motion of his back. He ordered MRI testing. The MRI of the lumbar spine showed it was normal. The MRI of the thoracic spine showed a mild osteophyte formation due to degenerative osteoarthritis of the mid to lower thoracic spine. There was no disc herniation or central stenosis.

Plaintiff suffered from stomach problems in August 1989. He was diagnosed with peptic acid disease by Dr. Michael Murphy and advised to stop drinking and smoking.

Plaintiff again complained of chest congestion in January 1990. He also complained of an earache and nasal congestion. He was again prescribed Amoxicillin. He was subsequently seen by Dr. Coker who diagnosed bronchitis with recurrent vomiting and tenderness. He had plaintiff admitted to the hospital because of plaintiff's poor health. After admission, Dr. Coker learned that plaintiff had been drinking heavily recently. On January 8, 1990, Dr. Coker noted that plaintiff's alcohol hepatitis had improved. He encouraged plaintiff to get involved in an alcohol treatment program. Dr. Coker saw him again in May when plaintiff complained of insomnia. Dr. Coker felt that plaintiff's problems were related to his alcoholism.

In late 1991, plaintiff suffered from a rash on his chest and abdomen and from hemorrhoids. He was given prescriptions for both problems.

On July 18, 1992, plaintiff was admitted to St. Francis Hospital for chemical dependency treatment. He was graduated from the program on July 24, 1992. The report of his counselor contained the following recommendations and prognosis:

Recommendation is that patient attend three to five AA [Alcoholics Anonymous] or NA [Narcotics Anonymous] meetings each week. It is further recommended that the patient work with a Twelve Step sponsor in ongoing recovery. It will be essential for the patient to seek employment to further structure life and to provide stability and self-reliance due to current dysfunction within marital relationship.

It is further recommended that patient attend one year of Continuing Care Services through St. Francis After Care Program.

Prognosis for patient is guarded dependent upon follow through of After Care recommendation and patient's motivation for recovery.

Plaintiff was seen by Dr. Coker again on July 30, 1992. Plaintiff continued to complain about back problems and a rash. Dr. Coker wrote prescriptions for his rash and for continued problems with anxiety and insomnia.

On November 13, 1992, plaintiff was examined by Dr. Phillip E. Mills. Plaintiff reported he became weak upon performing physical activities. He continued to drink some alcohol and stated that he was depressed. Dr. Mills found some slight generalized motor weakness. He found that plaintiff was able to walk on his heels and toes and that he "got around fairly well," with no coordination difficulty. He did find that plaintiff's reflexes were abnormal and there was slight loss of sensation in the feet. He assessed possible alcoholism with polyneuropathy and possible Charcot–Marie Tooth disease. Dr. Mills' report contained the following closing comment:

I would imagine that this problem is primarily one related to alcohol abuse. But regardless of the exact etiology, I certainly think it is questionable as to whether or not he will be able to carry on activities dealing with sitting, standing, walking, or so forth. By history, he does become worse with time and so it is not completely valid exam just to see how he is here for an hour when if he had been working for three or four hours it might be a different story.

Dr. Coker may be able to shed some light on this because he has followed him for quite a long time.

In January and February 1993, plaintiff contacted SCMHC again. He complained of continued stress and anxiety. He also complained of physical problems including back and leg pain. He stated he continued to attend AA meetings and denied abusing alcohol, but he admitted to drinking beer once in a while.

Plaintiff was thoroughly examined by Dr. Jesse Haggerty in March and April 1993. He diagnosed alcoholic cirrhosis, alcoholism, portal hypertension, depression, gastritis, hemorrhoids and bronchitis. Dr. Haggerty prescribed various medications for his problems. On April 12, 1993, Dr. Haggerty reached the following conclusions concerning plaintiff's ability to work:

At this point in time, there is no medical reason why David should not be able to hold a full-time job. He has no physical restrictions from my standpoint. At present his single largest barrier to work performance is his emotional state. He is an alcoholic who is currently drinking. If anything, this would be a factor to influence his ability to hold a steady job. From my contact with him, I find David to be a quite intelligent fellow. However, because of his active drinking, I would be hesitant for him to perform work that he could possibly injure himself, or others, with heavy equipment, etc.

On April 6, 1993, plaintiff's supervisor at Kansas Department of Transportation, where plaintiff has worked since February 14, 1993, reported that plaintiff's quality and quantity of work were "just satisfactory," while his

attendance and punctuality were "unsatisfactory." The supervisor also stated that plaintiff took too many breaks and could not stay seated over thirty minutes. Plaintiff was not recommended for competitive employment at that time.

Plaintiff returned to SCMHC for treatment of alcoholism on October 18, 1993. Upon discharge on November 23, 1993, his counselors noted that his treatment had been successful, but that his prognosis was guarded. They recommended he enter and complete a stay at Stepping Stones, enter outpatient counseling, continue with periodic medical check appointments, and attend three to four AA and NA meetings.

Thereafter, plaintiff did enter the Stepping Stones program. He was a part of the program from November 23, 1993 through April 1994. He was treated for much of that period by Janice Levering, a social worker. In the initial treatment plan, plaintiff acknowledged that one of his short term goals was to "seek employment on a daily basis," and one of his long term goals was to "find full time employment." In plaintiff's therapy sessions, Ms. Levering found plaintiff was stressed due to a variety of reasons, but he did not warrant a diagnosis of personality disorder. She noted plaintiff had abstained from alcohol and was highly motivated not to drink due to his commitment to his daughter and his knowledge of his liver damage.

On December 29, 1993, Dr. Haggerty wrote a letter to plaintiff's vocational rehabilitation counselor that contained the following comments:

I too would like to see David back in the work force as I think this is truly what he would most like to do with his life, and I think it would be better for him globally than most of the medications I can provide. I too have questions regarding Dave's intellectual abilities. I think his "stamina" is his single biggest hindrance at this time. He is both physically and emotionally impaired to be able to hold down a full time job. I also need to question how well he deals with authority figures.

We see a lot of patients in our office requesting disabilities on a regular basis. It is clear to me that there should be little doubt regarding his suitability for SSI/SSDI. Meeting his basic needs is a major factor in his life. I too suspect that there is some type of part-time work that he will be able to tolerate physically and emotionally.

During the period from January 1994 through July 1994, plaintiff was seen several times by Dr. Haggerty and Dr. Karen Bruce. He had complaints of abdominal, back, hip and foot pain, depression, gastritis and hemorrhoids. He was treated with various prescriptions during that period. On March 3, 1994, Dr. Bruce noted plaintiff had not had a drink since October 22, 1993. During an appointment on April 13, 1994, Dr. Bruce noted the following: "He is sleeping well, eating well, and has a good attitude." On May 23, 1994, Dr. Bruce noted that plaintiff was quite despondent. Plaintiff was primarily concerned about his lack of income and his uncertain job future. Dr. Bruce did note plaintiff was satisfied with using no additional medication for his back at this time.

During the period from March 1994 through July 1994, plaintiff received counseling at SCMHC. The sessions touched on health, parenting, life-change, grief and alcoholism issues. Ms. Levering, his counselor, found that plaintiff's depressive state had decreased "somewhat" with medication and therapy. She noted he continued to abstain from alcohol. She indicated his prognosis was "fair."

On August 24, 1994, plaintiff was seen by Dr. Michael Engelken, an associate of Dr. Bruce and Dr. Haggerty. Plaintiff made the appointment to discuss his long-term back problems. Dr. Engelken also considered plaintiff's problems with depression. Dr. Engelken learned that plaintiff's back problems were helped with the medications that he was presently taking. Dr. Engelken commented: "He is not totally asymptomatic, but his aches and pain have some improvement with the ... prescribed medication." Dr. Engelken also found that plaintiff was coping "pretty well" with the various problems that were causing him stress and depression.

Plaintiff continued to receive counseling at SCMHC until September 26, 1994. His

treatment was deemed completed on that day. Ms. Levering noted that plaintiff had made a successful transition into his own apartment and was committed to maintaining a life structure for recovery from alcoholism. It was recommended that plaintiff attend a minimum of three AA meetings each week. Ms. Levering assessed his prognosis as "good."

On October 24, 1994, Dr. Haggerty responded to a letter from Carol Doss, plaintiff's benefits advocate. Dr. Haggerty stated that plaintiff had sent him a letter which bordered on a request for a fraudulent statement regarding plaintiff's ability to perform work. Dr. Haggerty reiterated his opinion that plaintiff was able to perform part-time work. He noted that plaintiff "had some unrealistic expectations of what he should be qualified or permitted to do with regard to his part-time employment."

At the hearing before the ALJ, plaintiff testified that he has been disabled since August 2, 1987 as a result of back pain, fatigue, alcoholism, depression, foot pain and headaches. He noted his back problems began in 1983 when he was involved in an automobile accident. He stated his back pain has worsened since that time. He described the pain as a sharp, constant pain. He also indicated he suffers from pain in his feet, which has gotten worse since it began in the early 1980's.

He has had a problem with alcohol since 1987. He testified the problem intensified when he had employment and marital problems. His alcohol use has led to cirrhosis of the liver. He acknowledged he has been treated for alcoholism on several different occasions. He has not had a drink since October 23, 1994.

Plaintiff also testified to problems with depression, anxiety and sleeplessness. He currently takes medication for these problems. This medication causes dryness in his mouth and blurred vision. He stated that he suffers from daily headaches. He is unable to take medication for his headaches because of his other medical problems.

At the time of the hearing, plaintiff was residing at a halfway house. He helps with some light work tasks such as dusting, but he noted that he gets tired easily. Plaintiff began noticing problems with fatigue in 1986 or 1987. He is currently able to drive, but he must get out and stretch after traveling a short distance. He indicated he must use the restroom every twenty to thirty minutes. He is able to sit and stand for approximately one-half hour. He believes he can lift fifteen pounds, but not on a repetitive basis.

Venda R. Johnson, a vocational expert, also testified in response to a hypothetical question posed by the ALJ. She opined that there were light and sedentary jobs that plaintiff could perform. She stated that plaintiff could perform the following light work: photo copy machine operator, security gate keeper and assembler. She further testified plaintiff could perform sedentary jobs of information clerk or cashier. She did not think his problem with urinary frequency would cause a problem for any of these jobs, except for cashier. She noted that all of the jobs allowed for sit/stand options and some flexibility of movement.

The ALJ found that plaintiff was not engaged in substantial gainful employment; had severe impairments; did not meet or equal a listed impairment; could not perform his past relevant work; but had the residual functional capacity to enable him to do other work in the national economy. He determined plaintiff's testimony was not fully credible. He did note that plaintiff suffered from several non-exertional limitations. The ALJ decided plaintiff had the capacity to perform a full range of sedentary and light work reduced only by his non-exertional limitations. Based upon the testimony of the vocational expert, he found that plaintiff could perform employment as a copy machine operator, an assembler, a gatekeeper, a cashier and an information clerk. Accordingly, the ALJ concluded plaintiff was not disabled.

Plaintiff contends the ALJ's decision is not supported by substantial evidence. Plaintiff argues that the ALJ has not fully considered the statements of Dr. Haggerty in reaching his conclusion that he is not disabled. He points to statements made by Dr. Haggerty in which he indicates that plaintiff's physical

and emotional impairments would make it difficult for plaintiff to maintain full-time employment. Plaintiff further points to other medical evidence in the record which shows that he has suffered from (1) back and foot pain which preclude sitting or walking for any extended period of time; (2) emotional problems which cause severe depression and suicidal ideations; (3) alcohol-related problems. Finally, plaintiff notes that the most compelling evidence may be his inability to successfully handle his last position with the Kansas Department of Transportation. He notes that this employer, after observing his work for approximately six weeks, could not recommend him for "competitive employment."

In considering whether plaintiff is entitled to disability benefits, the court must determine whether the ALJ's decision that plaintiff was not disabled prior to the last date of his insured status, which was September 30, 1993, is supported by substantial evidence. And, in considering whether plaintiff is entitled to SSI benefits, we must determine whether the ALJ's decision that plaintiff was not disabled while his application was pending is supported by substantial evidence.

▬ Plaintiff raises some good arguments and points to some evidence that is very supportive of his position. Nevertheless, the court is forced to evaluate the entirety of the evidence and particularly the views of plaintiff's treating physicians. The record does reveal that plaintiff has suffered from various physical and emotional problems since 1987. The record, however, also reveals that plaintiff was employed for at least a portion of this period. Evidence of employment during a period of alleged disability is highly probative of a claimant's ability to work. See 20 C.F.R. §§ 404.1571, 416.971; see also Mullis v. Bowen, 861 F.2d 991, 993 (6th Cir.1988). Plaintiff ultimately left his employment as a realtor due to economic reasons, not because of physical or emotional problems. This evidence provides support for the ALJ's decision that plaintiff was not disabled prior to September 30, 1993. See Potter v. Secretary of Health and Human Services, 905 F.2d 1346, 1349 (10th Cir. 1990).

▬ Moreover, plaintiff's primary treating physician, Dr. Haggerty, has been consistent in his belief that plaintiff can perform some type of work. In April 1993, he was of the opinion that plaintiff could perform full-time work, albeit not work where he could injure himself or others. In December 1993, Dr. Haggerty thought that although plaintiff was a suitable candidate for disability and SSI benefits, plaintiff could still handle "some type of part-time work." Dr. Haggerty reiterated his opinion that plaintiff could perform part-time work in October 1994. The Secretary must give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments if it is "well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record." Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir.1994). The opinion of a claimant's treating physician is entitled to great weight because it reflects expert judgment based on continuing observation of a patient's condition over a prolonged period of time. Here, Dr. Haggerty had treated plaintiff for several years and his opinion was supported by medical data. Dr. Haggerty's last letter, dated October 24, 1994, demonstrates that plaintiff was not disabled while his application was pending.

A claimant need not be found capable of full-time work to be found capable of working. The Social Security regulations regard part-time work as "substantial work activity." 20 C.F.R. § 404.1572(a); see also Conn v. Secretary of Health & Human Services, 51 F.3d 607, 610 (6th Cir.1995). Dr. Haggerty's conclusion that plaintiff could perform part-time work provides additional support for the ALJ's decision.

The court finds that the ALJ carefully examined plaintiff's complaints of pain. In his findings, the ALJ found plaintiff's testimony to be partially credible when considered in light of the medical signs and findings, his history of medical treatment, and the reports of treating and examining physicians. Credibility determinations are peculiarly the province of the ALJ and will not be disturbed by this court when supported by

substantial evidence. *Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 777 (10th Cir.1990). The court found the ALJ's evaluation of plaintiff's complaints of pain appropriate and consistent with the medical evidence. *See Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir.1987). Although it is clear that claimant suffers some pain, "[d]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe ... as to preclude any substantial gainful employment." *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir.1988) (quotation omitted).

Finally, the court notes that the ALJ carefully considered plaintiff's alcoholism. The ALJ appropriately considered plaintiff's ability to control his drinking and whether his alcoholism precluded him from obtaining and maintaining employment. *See Coleman v. Chater*, 58 F.3d 577, 579–80 (10th Cir.1995).

In sum, the court finds that the decision of the ALJ is supported by substantial evidence. Accordingly, the decision of the ALJ must be affirmed.

**IT IS THEREFORE ORDERED** that the order of the Commissioner be hereby affirmed.

**IT IS SO ORDERED.**