William E. NOBLE, Plaintiff,

v.

John J. CALLAHAN, Ph.D.,[1] Acting Commissioner of Social Security, Defendant.

Civil Action No. 96–4195–DES.

United States District Court, D. Kansas.

Aug. 8, 1997.

**1.** President Clinton appointed John J. Callahan, Ph.D., to serve as Acting Commissioner of Social Security, effective March 1, 1997, to succeed Shirley S. Chater. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, John J. Callahan, Ph.D., should be substituted for Shirley S. Chater as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Roger D. Fincher, Bryan, Lykins & Hejtmanek, P.A., Topeka, KS, for Plaintiff.

Nancy M. Landis, Office of U.S. Atty., Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on plaintiff's motion seeking reversal or remand of the Social Security Commissioner's denial of disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Doc. 7).

## I. PROCEDURAL BACKGROUND

On November 8, 1993, plaintiff filed an application for Social Security Disability Insurance benefits. Plaintiff alleged in his application that he became unable to work because of his disabling condition on August 15, 1986. The Social Security Administration ("Administration") denied plaintiff's claim ini-

tially on November 23, 1993, and on reconsideration on March 10, 1994.

On April 5, 1994, plaintiff requested a hearing by an administrative law judge. His hearing was held on June 27, 1995. In a decision dated September 9, 1995, the Administrative Law Judge ("ALJ") concluded plaintiff had the ability to perform substantial gainful activity between November 29, 1988, and June 30, 1991. The ALJ therefore determined that plaintiff was not entitled to disability insurance benefits because he had not been "disabled" within the meaning of the Social Security Act ("Act") at any time when he met the earnings requirement of the Act.[2] On September 17, 1996, the Appeals Council of the Administration denied plaintiff's request for review. The ALJ's decision thus stands as the final decision of the Social Security Commissioner ("Commissioner") from which plaintiff now appeals.

## II. FACTUAL BACKGROUND

The court is satisfied with the accuracy of the ALJ's factual summary and adopts that summary substantially as follows:

Plaintiff has an eleventh grade education and was 49 years of age when he last had insured status under Title II of the Social Security Act ("Act"). A hearing was held in Kansas City, Kansas, on June 27, 1995, at which plaintiff appeared with his attorney, Danton C. Hejtmanek. A vocational expert, Lesa Keen, was also present and testified.

Plaintiff testified at the hearing that his last well-paying job at Columbia Metal ended in December 1984 when he left town following a divorce. He subsequently remarried. From November 1988 through June 1991, plaintiff alleges an inability to work due to constant low back pain which he estimated at a level seven on a scale of one to ten. During this time plaintiff's financial support reportedly came from his wife's employment at Hallmark Cards. Although his wife's job also provided medical insurance for the plaintiff at all times between November 1988 and June 1991, plaintiff indicated that he sought no medical treatment and took no prescription pain medications during this time. Instead, his treatment allegedly consisted of a monthly trip to a chiropractor and over-the-counter medications such as Advil, which helped relieve his discomfort and caused no adverse side effects. The chiropractic visits cannot be verified, however.

Plaintiff further admitted that his pain is currently worse than it was in June 1991. He reportedly fell on ice in January 1993 and, although denying that his pain increased following this accident, he admittedly increased his attempts to seek relief of pain after the fall. He also stated that he stopped smoking in March 1993 because he developed asthma at that time.

From November 1988 through June 1991 plaintiff lived with his wife in a single family home in Osage City, Kansas. He stated that he did no household chores and participated in no hobbies or other activities, although he drove a car seven or eight blocks to visit his mother. Most of his time was allegedly spent watching television.

Plaintiff asserts that he first injured his back in 1973, and had been experiencing progressively worsening pain ever since. After his last good paying, full-time, and stable job ended in December 1984, plaintiff reportedly worked construction jobs off and on, but has allegedly been unable to work since 1986. Prior to 1986 plaintiff's activities included gardening, hunting and fishing. Although he admittedly failed to seek medical treatment during the relevant time, plaintiff stated that was because doctors told him there was nothing which could be done for him, and he claims to have received little relief from any medical treatment. For the previous eight years plaintiff states that he has reclined one hour in the morning and one hour in the afternoon to rest his back.

There is no medical evidence relating to the period from November 29, 1988, to June 30, 1991. In fact, the record does not substantiate that plaintiff sought treatment of any kind from November 1988 until February 3, 1993, when he complained of dramati-

2. For insured status under the Act, an individual is required to have 20 quarters of coverage in the 40–quarter period ending with the first quarter of disability. This is the so-called "earnings requirement." 42 U.S.C. § 416(i)(3)(B) and § 423(c)(1)(B).

cally increased pain in his back and the onset of pain in his left leg after falling on ice. A CT scan revealed degenerative changes at L4–5 which were consistent with spinal stenosis, and a bulging disc at L5–S1 which appeared consistent with herniated entrapment of the nerve root on the left. Examining and treating physicians concurred that plaintiff was not a good surgical risk due to obesity and heavy cigarette smoking, and medical professionals encouraged him to lose weight and stop smoking. His complaints of pain were treated with epidural steroid injections in February and March 1993.

Additional facts are set forth throughout the court's discussions needed.

## III. STANDARD OF REVIEW

■■ 42 U.S.C. § 405(g) provides for judicial review of a final decision of the Commissioner of the SSA. The reviewing court must determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Washington v. Shalala,* 37 F.3d 1437, 1439 (10th Cir.1994). Substantial evidence is adequate relevant evidence that a reasonable mind might accept to support a conclusion. *Hargis v. Sullivan,* 945 F.2d 1482, 1486 (10th Cir.1991). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir.1994) (citation omitted). "A finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan,* 966 F.2d 1326, 1329 (10th Cir.1992) (citations omitted). The reviewing court must also determine whether the Commissioner applied the correct legal standards. *Washington,* 37 F.3d at 1439. Reversal is appropriate not only for lack of substantial evidence, but also for cases where the Commissioner uses the wrong legal standards. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir.1994).

## IV. DISCUSSION

■■ To qualify for disability insurance benefits under the Social Security Act ("Act"), a claimant must establish that he meets the insured status requirements, is under sixty-five years of age, and is under a "disability." *Flint v. Sullivan,* 951 F.2d 264, 267 (10th Cir.1991). As defined in the Act, "disability" is the inability to engage in any substantial gainful activity for at least twelve months due to a medically determinable impairment. 42 U.S.C.A. § 423(d)(1)(A) (1995). The Act provides:

An individual shall be determined to be under a disability only if his physical impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which· exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C.A. § 423(d)(2)(A) The claimant has the burden of establishing disability under the Act. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.1989). The burden then shifts to the government to show the claimant retains the ability to perform other work which exists in the national economy. *Sorenson v. Bowen,* 888 F.2d 706, 710 (10th Cir.1989).

■■ The Commissioner has established a five-step evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. *See Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir.1988)(discussing five-step disability test). When reviewing a claim for disability benefits, an ALJ must follow the same five-step procedure. *Trimiar v. Sullivan,* 966 F.2d 1326, 1329 (10th Cir.1992). If the ALJ finds at any point in the process that a person is disabled or not disabled, the review ends. *Id.* At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. *Williams,* 844 F.2d at 750–52. If not, the ALJ continues to step two and considers whether "the claimant has a medically severe impairment or combination of impairments." *Id.* At step three, the ALJ determines whether the impairment is equivalent to one of a number of impairments found in the "Listing of Impairments,"

20 C.F.R. Part 404, Subpt. P, App. 1, which are deemed so severe as to preclude substantial gainful activity. *Id.* If the ALJ finds no equivalency, she then decides whether the impairment prevents the claimant from continuing his past relevant work. *Id.* If so, the ALJ proceeds to the final step and determines whether the claimant has any Residual Functional Capacity ("RFC") to perform other work available in the national economy, considering such additional factors as the claimant's age, education, and past work experience. *Id.*

In applying this analysis to plaintiff's case, the ALJ found at step three that plaintiff did not have an impairment or combination of impairments meeting or equaling the level of severity of any impairment described in the "Listing of Impairments." However, proceeding to step four, the ALJ noted that plaintiff's impairments prevented him from returning to his past relevant work. The ALJ also noted the burden then shifted to the Commissioner at the final stage of the five-step sequential analysis to show there were jobs available that plaintiff could perform which exist in significant numbers in the regional or national economy. At step five, the ALJ concluded, based on the vocational expert's testimony, that a significant number of jobs still existed in the national economy which plaintiff would be capable of performing. The ALJ identified the occupations of bench assembler, machine tender, and parking lot attendant, which he found existed in significant numbers in both the relevant regional and national economies. He therefore concluded that plaintiff was not disabled and not entitled to disability benefits.

▮▮▮▮ Plaintiff contends that the ALJ's credibility determination was not supported by substantial evidence. Specifically, plaintiff contends that his complaints of disabling pain were improperly discounted. The ALJ must consider a claimant's complaints of pain once he has established by objective medical evidence that he suffers from a pain-producing impairment, and there is a loose nexus between that impairment and her subjective allegations of pain. *Kepler v. Chater,* 68 F.3d 387, 390 (10th Cir.1995) (citing *Luna v.*

*Bowen,* 834 F.2d 161, 164 (10th Cir.1987)). Because those conditions were met here, the factors to be considered by the ALJ include the following: the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence. *Id.* at 391 (quotation omitted).

▮▮▮▮ Although the ALJ must consider plaintiff's subjective complaints, the ALJ does not have to accept them as true. *Underwood v. Bowen,* 807 F.2d 141, 143 (8th Cir.1986). A credibility determination is left to the ALJ as the trier of fact, and the ALJ's credibility findings are traditionally given particular deference. *Williams v. Bowen,* 844 F.2d 748, 755 (10th Cir.1988) (citing *Beavers v. Secretary of Health, Education and Welfare,* 577 F.2d 383, 387 (6th Cir.1978)). The ALJ's credibility findings must be affirmed if they are supported by substantial evidence on the record as a whole. *See Ellison v. Sullivan,* 929 F.2d 534, 537 (10th Cir., 1990).

▮▮▮▮ Plaintiff objects to the ALJ supporting his credibility finding on plaintiff's failure to seek medical treatment during the relevant time period between November 29, 1988, and June 30, 1991. Failure to seek medical treatment, however, is inconsistent with plaintiff's allegations of disabling impairment and tends to support the ALJ's credibility determination. *Gwathney v. Chater,* 104 F.3d 1043, 1045 (8th Cir.1997). Plaintiff claims that he sought chiropractic treatment once a month from 1988 to 1991, but that the records were not available due to a fire. But even if plaintiff did seek chiropractic treatment during that period, such treatment would be considered conservative treatment and not medical treatment. *See* 20 C.F.R. § 404.1513 (1996). Likewise, plaintiff's use of only nonprescription medications to relieve pain is inconsistent with plaintiff's allegations of disabling pain and

tends to support the ALJ's credibility finding. *See, e.g., Caldarulo v. Bowen,* 857 F.2d 410, 413 (7th Cir.1988) (non-aggressive treatment inconsistent with severe disability allegations); *Watson v. Shalala,* 1994 WL 605997 (D.Kan.1994). That plaintiff's use of non-prescription pain medication provided relief is also inconsistent with a disabling impairment and further supports the ALJ's finding. *Clark v. Chater,* 75 F.3d 414, 417 (8th Cir.1996) (citing *Reed v. Sullivan,* 988 F.2d 812, 815 (8th Cir.1993) (conditions that can be reasonably regulated cannot constitute a basis for disability)).

Plaintiff contends the ALJ should not have considered his failure to seek medical treatment during that period as unfavorably affecting plaintiff's credibility. In support of this argument, plaintiff first points out he testified at the ALJ hearing that he did not seek treatment other than chiropractic manipulations after 1988 because he had been previously advised that nothing could be done for his condition. This argument is unconvincing. According to the record, Dr. Wertzberger, in his 1988 report, recommended a specific plan of treatment, including physical therapy and epidural steroid injections, which plaintiff failed to follow.

Plaintiff also suggests that he did not attempt to improve his condition between 1988 and 1991 because he could not afford the deductible on his wife's insurance as they were raising five children. During the hearing, however, plaintiff testified that no one else was in his household besides he and his wife. Plaintiff made no mention of any children. Additionally, the record reveals no evidence that plaintiff was ever refused medical treatment due to financial reasons. Nor does the record reveal evidence that plaintiff attempted to seek treatment from a medical assistance program. *See Murphy v. Sullivan,* 953 F.2d 383, 386 (8th Cir.1992).

Plaintiff disputes the ALJ's ruling because it implies that his condition significantly worsened subsequent to his 1993 fall. It is undisputed that plaintiff's fall caused him to seek medical attention. The ALJ determined that the medical evidence during this period revealed that plaintiff's pain had increased. Although plaintiff testified that his pain did not increase as a result of his fall, the ALJ noted that this testimony is directly contradicted by reports of treating and examining physicians which indicate that claimant complained of increased pain in his back, the onset of pain in his left leg, and substantially reduced functional capacity after he fell. Furthermore, objective testing revealed degenerative changes, spinal stenosis, and a possible herniated disc. The ALJ's interpretation of this evidence as impacting plaintiff's credibility was not unreasonable and plaintiff's attempt to harmonize his testimony regarding the consequences of his fall with his subsequent conduct does not persuade the court otherwise.

 Plaintiff also challenges the ALJ's credibility finding by pointing out that his medical records from 1978 through 1988 show that he complained of constant back pain throughout the period. While this may be true, plaintiff nevertheless maintained employment during this time. Accordingly, plaintiff's impairment cannot be considered presently disabling without showing there has been a significant deterioration of his condition. *Browning v. Sullivan,* 958 F.2d 817, 821 (8th Cir.1992). *See Williams v. Chater,* 923 F.Supp. 1373, 1379 (D.Kan.1996).

Plaintiff alleges that his minimal activities during 1988 through 1991 support his claim of disabling pain. During that time, plaintiff's activities consisted of driving a car, watching television, removing the household trash once weekly, running the sweeper twice weekly, visiting his mother two or three times weekly, and dusting furniture. The ALJ stated that plaintiff's testimony regarding his activities could not be confirmed or refuted do to the lack of evidence. The ALJ also stated, however, that he suspected if plaintiff was as limited as reported, he would have aggressively sought medication and treatment as he did in 1993. Plaintiff argues that his testimony regarding the severity of his pain and his minimal activities during 1988 through 1991 is more indicative of his credibility than the ALJ's "mistaken assumptions." The court disagrees. As the trier of fact, the ALJ is not required to believe all of plaintiff's assertions regarding his activities. *Johnson v. Chater,* 87 F.3d

1015, 1018 (8th Cir., 1996). Such findings must stand so long as the record sufficiently demonstrates substantial evidence supporting the ALJ's conclusions. *See Ellison,* 929 F.2d at 537. The court finds that in this case the ALJ's findings are sufficiently supported by the record.

Plaintiff next contends that he is disabled as a matter of law under the Medical–Vocational Guidelines ("grids"). The grids, which were developed to aid in the determination of social security disability claims, account for a claimant's residual functional capacity, age, education and work experience and lead to a result of disabled or not disabled. *See* 20 C.F.R. § 404, Subpt. P, App. 2 (1994). Resort to the grids is only appropriate, however, when these characteristics exactly fit a listing in the grids. *Gossett v. Bowen,* 862 F.2d 802, 806 (10th Cir. 1988). Where significant non-exertional impairments exist, such as back pain, the ALJ should not apply the grids conclusively. *Id.* Instead, "[the grids may serve only as a framework to determine whether sufficient jobs remain within a claimant's range of residual functional capacity.]" *Hargis v. Sullivan,* 945 F.2d 1482, 1490 (10th Cir.1991) (citing *Huston v. Bowen,* 838 F.2d 1125 (10th Cir.1988)). In this case, the ALJ determined that the plaintiff could work based on the vocational expert's testimony and used the grids only as a framework for his decision.

Plaintiff also contends that the ALJ's functional capacity determination is flawed and is not based on substantial evidence. The court disagrees. It is the responsibility of the ALJ to determine plaintiff's residual functional capacity based on all of the relevant evidence including medical records, observations of treating physicians and others, and plaintiff's own description of his limitations. 20 C.F.R. §§ 404.1545–46, 416.945–46. As the trier of fact, the ALJ is uniquely situated to assess plaintiff's condition and demeanor. *Williams v. Bowen,* 844 F.2d 748, 755 (10th Cir.1988). The ALJ may also consider residual functional capacity forms completed by medical consultants. 20 C.F.R. § 404.1527(f)(2).

In the present case, the ALJ did not have the benefit of medical reports or opinions covering the relevant time period. Instead, it appears from the record that the ALJ properly relied on Dr. Wertzberger's 1988 medical opinion, plaintiff's own statement, and the residual functional capacity assessment of Dr. John Conley in making his determination. It also appears from the record that the ALJ considered other available evidence and based her decision on the record as a whole. Plaintiff's argument regarding the insufficiency of Dr. Conley's functional capacity assessment is unavailing and the court finds that the ALJ's functional capacity determination is supported by substantial evidence.

As a final argument, plaintiff contends the ALJ erred by relying on the vocational expert's response to a hypothetical inquiry which failed to include all the impairments suggested by the evidentiary record. The court disagrees. The hypothetical which elicited the response upon which the ALJ based her decision included those impairments which the ALJ found to be properly supported by the record as a whole. *See Gay v. Sullivan,* 986 F.2d 1336, 1341 (10th Cir.1993). Because the hypothetical was properly formulated, the expert's testimony that jobs existed which plaintiff could perform, constitutes substantial evidence supporting the ALJ's finding. *Decker v. Chater,* 86 F.3d 953, 955 (10th Cir.1996). This finding may be overturned only if it is overwhelmingly contradicted by other evidence, which is not the case here.

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff's motion seeking reversal or remand of the Social Security Commissioner's denial of disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Doc. 7) is denied.