Tracy K.T. OTANI, Plaintiff,

v.

**CITY AND COUNTY OF HAWAII, Manuel Fragiao and Doe Entities 1–10, Defendants.**

Tracy K.T. Otani, Plaintiff,

v.

County of Hawaii, et al., Defendants.

**Nos. Cv 96–00632 DAE/ECK, Cv 96–00633 DAE/ECK.**

United States District Court, D. Hawai'i.

June 5, 1998.

---

Carl M. Varady, Honolulu, HI, Henry T. Nakamoto, Nakamoto Yoshioka & Okamoto, Hilo, HI, for Tracey K.T. Otani.

Howard H. Shiroma, Crudele Nishimura & Shiroma, Hilo, HI, Gregory Ball, Kapaau, HI, Brian J. De Lima, Hilo, HI, for Manuel Fragiao.

Joseph M. Kamelamela, Office of the Corporation Counsel—Big Island, Hilo, HI, for Hawaii County Police Department, County of Hawaii.

Margaret Jenkins Leong, Goodsill Anderson Quinn & Stifel, Honolulu, HI, Kenneth A. Ross, Kailua Kona, HI, for Haitsuka Brothers, Ltd.

*ORDER GRANTING DEFENDANT COUNTY OF HAWAII'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING DEFENDANT HAITSUKA BROTHERS, LTD.'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AGAINST THE COUNTY OF HAWAII AND HAITSUKA BROTHERS, LTD.*

DAVID ALAN EZRA, District Judge.

The court heard the parties' motions on May 26, 1998. Carl M. Varaday, Esq.,

appeared at the hearing on behalf of Plaintiff; Kenneth A. Ross, Esq., appeared at the hearing on behalf of Defendant Haitsuka Brothers, Ltd.; Joseph K. Kamelamela, Deputy Corporation Counsel, appeared at the hearing on behalf of Defendant County of Hawaii; Robert J. Crudele, Esq., appeared at the hearing on behalf of Defendant Manuel Fragiao. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS Defendant County of Hawaii's Motion for Partial Summary Judgment, GRANTS Defendant Haitsuka Brothers, Ltd.'s Motion for Summary Judgment, and DENIES Plaintiff's Motion for Partial Summary Judgment Against the County of Hawaii and Haitsuka Brothers, Ltd.

## BACKGROUND

Defendant Manuel Fragiao ("Fragiao") is a police officer employed by the Hawaii County Police Department. On December 29, 1989, while off duty, Fragiao attended a Christmas Party held at the Keaau Community Center. Plaintiff Tracy K.T. Otani ("Otani") was also in attendance at the party with his wife Darnell Otani ("Darnell"), another off-duty police officer.

At some point during the party, Otani allegedly yelled at Darnell to come outside. Once outside, Otani and Darnell proceeded to engage in a heated discussion. As the argument got louder, Fragiao and some of the other officers went outside and surrounded Otani. The other police officers told Otani to leave the area. Fragiao approached Otani, pulled out his service revolver, pointed it at Otani's head and told him "he had enough of this F"ing shit, I'll kill you." Defendant County of Hawaii's Motion for Summary Judgment, p. 3. The other officers asked Fragiao what he was doing. One of the officers distracted Otani by placing him in a choke hold. Fragiao shoved Otani in the chest and asked him whether he wanted to fight.

On December 29, 1992, the administrative review board of the Hawaii County Police Department ("Board") heard the Department's charges against Fragiao for pointing his gun at Otani and threatening to kill him. In a letter dated January 28, 1992, former Chief of Police Victor Vierra sustained the charges against Fragiao. Fragiao was subsequently suspended for seven days.

On September 21, 1994, Fragiao was employed by Defendant Haitsuka Brothers, Ltd. ("Haitsuka") as a Special Duty Officer, to direct traffic at Haitsuka's construction site in Hilo, Hawaii. On that day, according to Fragiao, Otani drove by the construction site and yelled to Fragiao: "You f'ing pussy." Plaintiff's Concise Statement of Facts, p. 3. When Otani returned to the construction site later that day, Fragiao told him to stop so that he could speak with him about his earlier comment. At that point, Fragiao alleges that Otani failed to stop and instead moved his vehicle toward him, forcing him to jump out of the way. Fragiao attempted to arrest Otani, whereupon Otani allegedly grabbed Fragiao's arm and pulled it into the vehicle. Fragiao then proceeded to arrest Otani, and in the process of the arrest sprayed Otani twice in the facial area with pepper spray. Otani was subsequently handcuffed by Fragiao.

In his deposition, Otani gave a different version of the events which took place on September 21, 1994. According to Otani, on September 21, 1994, he and a passenger were sitting in their vehicle talking and laughing. Fragiao allegedly walked up to the car and said "Hey, you guys laughing at me? What you guys want trouble or what? You F"ing guys laughing at me?" Defendant County of Hawaii's Motion for Summary Judgment, p. 5. Then, Fragiao grabbed Otani's left arm which was outside the door and blasted Otani with pepper spray. After attempting to speak with Fragiao, Otani pulled into the 7–Eleven parking lot where he was gagging and spitting up blood. After parking his vehicle, Otani got out of the car, whereupon Fragiao again sprayed him with pepper spray. Then, Fragiao pushed Otani onto the hood of the car and handcuffed him. When the handcuffs started digging into

his skin and cutting off his circulation, Otani asked Fragiao to loosen the handcuffs. Fragiao allegedly told him, "tough shit." *Id.* at 6.

On December 9, 1996, Fragiao was found guilty of criminal assault in the third degree, based upon his wrongful use of the pepper spray. On August 27, 1997, the Board heard the departmental charges against Fragiao for the use of unnecessary and excessive force while conducting Otani's arrest. The Board sustained three of the four charges against Fragiao and suspended him for seven days.

## STANDARD OF REVIEW

Rule 56 provides that summary judgment shall be entered when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. 2548.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S.

574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. *Id.* The evidence submitted by the nonmovant, in opposition to a motion for summary judgment, "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. 2505. In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law. *Id.* at 254, 106 S.Ct. 2505. The court must assess the adequacy of the nonmovant's response and must determine whether the showing the nonmovant asserts it will make at trial would be sufficient to carry its burden of proof. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted).

## DISCUSSION

I. County of Hawaii's Motion for Partial Summary Judgment

On March 24, 1998, Defendant County of Hawaii ("County") filed a motion for partial summary judgment. In this motion, the County argues that it is entitled to summary judgment on Plaintiff's claim under 42 U.S.C. Section 1983 because it does not have an unconstitutional policy or cus-

tom. On May 8, 1998, Plaintiff filed a memorandum in opposition to the County's motion for summary judgment. In his memorandum, Plaintiff argues that the County can be held liable under Section 1983 because its training and/or supervision of Officer Fragiao amounts to deliberate indifference to the constitutional rights of Plaintiff.

 A county may be held liable under Section 1983 only where the county itself causes the alleged constitutional violation. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). There is no respondeat superior or vicarious liability under Section 1983. *Id.; see also Board of the County of Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997). Instead, a plaintiff seeking to impose liability on a county under Section 1983 must identify a county policy or custom that allegedly caused the plaintiff's injuries. *Brown,* 117 S.Ct. at 1388.

In this case, Plaintiff has alleged that the County should be held liable under Section 1983 for its failure to adequately train and/or supervise Officer Fragiao. Plaintiff's Motion for Summary Judgment, p. 8. Plaintiff argues that based on the history of Fragiao's misconduct, the County should have done more than discipline or suspend Fragiao, but instead should have conducted an investigation to determine the cause of Fragiao's alleged misconduct. *Id.* Plaintiff asserts that because the County failed to take appropriate steps to monitor or control Fragiao's alleged misconduct, the County acted with deliberate indifference to the rights of Plaintiff and therefore can be held liable under Section 1983.

 Plaintiff is correct in asserting that the County can be held liable under Section 1983 for its failure to properly supervise or train its employees where such failure evidences a deliberate indifference to the constitutional rights of Plaintiff. *Canton,* 489 U.S. at 389, 109 S.Ct. 1197; *Davis v. City of Ellensburg,* 869 F.2d 1230, 1235 (9th Cir.1989). However, in order to rise to the level of a constitutional violation, the need for additional training or supervision must be "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training [or supervision] may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Canton,* 489 U.S. at 390, 109 S.Ct. 1197.

 "Whether a local government entity has displayed a policy of deliberate indifference is generally a question for the jury." *Oviatt By and Through Waugh v. Pearce,* 954 F.2d 1470, 1478 (9th Cir.1992). However, in those cases where a triable issue of material fact has been found to exist, the "plaintiffs have alleged a program-wide inadequacy in training" or supervision. *Alexander v. City and County of San Francisco,* 29 F.3d 1355, 1367 (9th Cir.1994). In this case, Plaintiff has only alleged that the County's training and supervision with respect to Officer Fragiao was inadequate. Plaintiff has not produced any evidence or made any allegations with respect to the County's training and/or supervision of other police officers.[1]

 Plaintiff has also failed to come forward with any evidence to suggest that the County's alleged inadequacy in the train-

**1.** In support of his claim that the County acted with deliberate indifference to his rights, Plaintiff provides the declaration of Robert Walsh, a Professor of Criminal Justice at the University of Houston. However, Mr. Walsh's opinion is limited to the adequacy of the County's training and/or supervision with respect to Officer Fragiao. Mr. Walsh has not expressed any opinion as to the adequacy of the County's training and/or supervision of its other police officers. Accordingly, Mr. Walsh's opinion does not suggest that the inadequacy in training and/or supervision is program-wide.

ing or supervising of Officer Fragiao rises to the level of deliberate indifference. Although Fragiao was involved in two separate altercations in 1988 and 1989, the latter involving the Plaintiff, each of these incidents was investigated by the police department and after each investigation, Fragiao was disciplined for his improper conduct. At the time of the 1988, 1989, and 1994 incidents, the police department had a specific policy in place which prohibited its officers from using excessive force when effecting an arrest. *See* General Order 606, attached as Exhibit 1 to Defendant County of Hawaii's Motion for Partial Summary Judgment. General Order 606 states that "[n]o person shall be subjected to more restraint than is necessary and proper for his arrest and detention." Under this regulation, police officers are required to document the use of any physical force in their arrest report. *Id.* The County additionally had in place a policy with respect to the use of pepper spray. *See* General Order 805, attached as Exhibit 1 to Defendant County of Hawaii's Motion for Partial Summary Judgment. Under General Order 805, police officers were instructed that they were not to use pepper spray unless "other methods of subduing violent persons have failed, and only as an alternative to more extreme uses of force." *Id.* The officers were further instructed that pepper spray was "not to be used carelessly or as a means of punishing someone." *Id.* It is therefore clear to the court that if Officer Fragiao did indeed use excessive force in his arrest of Otani in 1994, or in his use of pepper spray, such actions would have violated Department policy. "This violation ... undermines any finding that the county ..., as opposed to [the Officer], could have been found to have been deliberately indifferent to ... [Plaintiff's] safety." *Lewis v. Sacramento County,* 98 F.3d 434, 447 (9th Cir.1996), *cert. granted* 520 U.S. 1250, 117 S.Ct. 2406, 138 L.Ed.2d 173 (June 2, 1997).

Based on the record in this case, the court finds that Plaintiff has failed to establish a triable issue of material fact regarding the County's policy of inadequate training and/or supervision. Although the County's actions in this case may be considered negligent, this standard is "a much lower standard of fault than deliberate indifference." *Alexander,* 29 F.3d at 1367. "The deliberate indifference standard was specifically adopted by the Supreme Court in order to ensure that civil rights claims against municipalities attain a certain level of gravity before those entities are compelled to defend themselves at trial. Much of that assurance would be removed if plaintiffs could proceed to trial against a municipality on the basis of the failure to train [or supervise] a single officer, and without any showing that this failure was the result of a conscious or deliberate choice." *Id.* at 1367–68. By limiting his "proof to the adequacy of the training [and/or supervision] of a single officer, plaintiff has failed to create a genuine issue of fact as to the alleged deliberate indifference of the" County. *Alexander,* 29 F.3d at 1367. Accordingly, the court GRANTS the County of Hawaii's Motion for Partial Summary Judgment as to Plaintiff's Claim under 42 U.S.C. Section 1983.

## II. Defendant Haitsuka Brothers, Ltd.'s Motion for Summary Judgment

On March 5, 1998, Defendant Haitsuka Brothers, Ltd. ("Haitsuka") filed a Motion for Summary Judgment. In this motion, Haitsuka argues that it is entitled to summary judgment on Plaintiff's claim under 42 U.S.C. Section 1983 because there is no respondeat superior or vicarious liability under Section 1983. In regard to Plaintiff's common law claims, Haitsuka argues that it is entitled to summary judgment because Fragiao was an independent contractor, not an employee of Haitsuka, at the time of the September 21 incident.

### A. Plaintiff's Claims Under 42 U.S.C. Section 1983

In his motion for partial summary judgment, Plaintiff concedes that Haitsuka cannot be held liable under Section 1983

based on respondeat superior. Plaintiff therefore argues that his civil rights claim against Haitsuka is not premised on a theory of respondeat superior, but is instead based on "[Haitsuka's] joint enterprise with Fragiao while he worked as [Haitsuka's] employee." Plaintiff's Motion for Partial Summary Judgment, p. 9.

 Plaintiff is correct in his assertion that "[a] private party may be liable under § 1983 if he was a willful participant in joint action with state agents." *Ibarra v. Las Vegas Metropolitan Police Dept.,* 572 F.Supp. 562, 564 (D.Nev.1983). However, "[a] claim of conspiracy or action in concert requires the allegation of 'facts showing particularly what a defendant or defendants did to carry the conspiracy into effect, whether such acts fit within the framework of the conspiracy alleged, and whether such acts, in the ordinary course of events, would proximately cause injury to the plaintiff.'" *Id.* at 565 (quoting *Hoffman v. Halden,* 268 F.2d 280, 298 (9th Cir.1959)).

 In this case, Plaintiff has presented absolutely no evidence which suggests that Haitsuka was acting in concert with Fragiao when he arrested the Plaintiff on September 21, 1994. Other than its role as having hired Fragiao to direct traffic, Plaintiff has not alleged, nor provided any evidence of, Haitsuka's involvement in Plaintiff's arrest. In his motion for partial summary judgment, Plaintiff does describe how Haitsuka allegedly supervised and controlled Fragiao's actions with respect to his direction of traffic at the construction project. However, Haitsuka never told Fragiao how to perform his job of directing traffic, nor did it tell Fragiao when or how to arrest people who interfered with his job of directing traffic. Based on these facts, the court finds that Plaintiff has failed to establish that Haitsuka was acting in concert with Fragiao at the time of Plaintiff's arrest.

Plaintiff cites *Groom v. Safeway,* 973 F.Supp. 987 (W.D.Wash.1997), in support of his contention that Haitsuka was acting under color of state law at the time of Plaintiff's arrest. The plaintiff in *Groom* was a customer of Safeway who was detained by a Safeway security guard after the manager notified him that the plaintiff may have been attempting to shoplift a bag of shrimp. The security guard was an off-duty police officer who wore a Seattle Police Department uniform and a gun, and was paid by Safeway. The trial court found that Safeway was acting under color of state law because it had hired the officer "to serve Safeway's goal of deterring theft in its stores." *Id.* at 991. Accordingly, when the security guard was acting "in his capacity as a police officer, he did so on Safeway's time." *Id.* Based on these facts, the court found that Safeway was acting under state law. However, the court stressed that this did not make Safeway automatically liable for every action the officer took. *Id.* As the court explained, "it is possible that [the officer's] actions could have caused Plaintiff to be subjected to a deprivation of her civil rights while Safeway's actions did not; the Court merely holds that, whatever Safeway did, it did under color of state law." *Id.* To hold Safeway liable for the officer's actions, the Plaintiff had to produce some evidence that *Safeway* "caused her to be subjected to a deprivation of her constitutional rights through its hiring and training policies, or the lack thereof." *Id.*

 The court finds this case distinguishable from the *Groom* case in the first instance because Officer Fragiao was not hired to police the construction site. Pursuant to its contract with the State, Haitsuka was required to hire a police officer to direct traffic at its construction site. Thus, Haitsuka did not hire Fragiao to arrest anyone found to be committing a crime on Haitsuka's property. However, even if the court were to assume that Haitsuka was acting under color of state law for purposes of Section 1983, Plaintiff has still not alleged a sufficient basis for imposing liability on Haitsuka under Section 1983. "[A] corporation acting under color of state law will only be held liable

under § 1983 for its own unconstitutional policies. The proper test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983." *Sanders v. Sears, Roebuck & Company,* 984 F.2d 972, 975–76 (8th Cir.1993). Here, Plaintiff has not alleged, nor provided any evidence of, a policy by Haitsuka to either effectuate improper arrests, or to use excessive force in conducting an arrest. In fact, Haitsuka never gave Fragiao any instructions on who to arrest or on how to conduct an arrest. Haitsuka only instructed Fragiao to direct traffic, which is precisely the job he was hired to do. Accordingly, because Plaintiff cannot establish that he was arrested pursuant to an unconstitutional Haitsuka policy, he cannot establish a claim against Haitsuka under Section 1983. The court therefore GRANTS Haitsuka's motion for summary judgment on Plaintiff's Section 1983 claim.

### B. Plaintiff's Common-law Claims

In his First Amended Complaint, Plaintiff asserts a number of common law claims against Defendant Haitsuka including assault and battery, negligence, infliction of emotional distress, inadequate supervision and training, and punitive damages. In its motion for summary judgment, Haitsuka argues that it cannot be held liable on Plaintiff's claim for assault and battery, negligence or infliction of emotional distress because Fragiao was an independent contractor. Additionally, Haitsuka argues that it cannot be held liable on Plaintiff's claim for negligent training and/or supervision because Haitsuka did not have any knowledge of Fragiao's prior misconduct.

#### 1. *Plaintiff's Claims for Assault and Battery, Negligence, and Infliction of Emotional Distress*

Under Hawaii law, an employer is not responsible for torts committed by an independent contractor. *See Taira v. Oahu Sugar Co., Ltd.,* 1 Haw.App. 208, 616 P.2d 1026 (1980). In determining whether a particular individual is an independent contractor or an employee of the defendant, the court must look to the defendant's supervision and control over the individual. Where an employer hires an individual to perform a specific task or project, but does not instruct him on the means or method for completing it, said individual is considered to be an independent contractor. *Tomondong v. Ikezaki,* 32 Haw. 373 (1932). Where, however, an employer does instruct the worker on how he should complete his job, said individual is considered to be an employee. *Id.*

In his motion for summary judgement, Plaintiff argues that Fragiao should be considered an employee of Haitsuka because Haitsuka told Fragiao when to report to work and where to work, he was supervised by Haitsuka's project manager, he "was told where to place the traffic control cones on the road, was expected to adjust traffic patterns to meet Haitsuka's changing work patterns and do whatever was necessary to maintain [ ] safety around [Haitsuka's] work site." Plaintiff's Cross-motion for Summary Judgment, p. 14. Plaintiff therefore asserts that Haitsuka retained sufficient control over Fragiao's actions such that he should be considered an employee of Haitsuka.

Although Plaintiff makes a valiant attempt to establish that Fragiao is an employee of Haitsuka, the court finds that this conclusion is not supported by the undisputed evidence in this case, specifically the affidavit of Fragiao himself. Haitsuka informed the Hawaii County Police Department that it needed an officer to direct traffic at its construction site on September 21, 1994. Pursuant to established Department procedure, Fragiao was given the assignment as he was the next officer in line for special duty. In his affidavit, Fragiao states that no one from Haitsuka "trained [him] in directing and controlling traffic since such training was unnecessary." Affidavit of Manuel Fragiao, ¶ 9, attached to Haitsuka's Motion for Summary Judgment. Fragiao explained that he had been "trained [on] how to

direct and control traffic at the Police Academy." *Id.* at ¶ 7. "In addition to said training, at the time of the September 21, 199[4] special duty assignment, [Fragiao] had extensive experience in traffic direction and control." *Id.* at ¶ 8. In his affidavit, Fragiao further states that no one from Haitsuka "instructed or directed the manner, method or means by which [he] directed or controlled traffic." *Id.* at ¶ 10. Based on the uncontroverted evidence presented by Fragiao in his affidavit, the court finds that, as a matter of law, Fragiao was an independent contractor, not an employee of Haitsuka on September 21, 1994.

In cases involving police officers who are employed by a private corporation, the court should also consider another factor in determining whether the private corporation can be held liable under respondeat superior for the officer's actions. Courts which have addressed this issue have made a distinction between holding the corporation liable for acts committed by the officer while performing a public function, and those committed while carrying out the duties of the employer. For example, in *Marks v. Crawford,* 882 F.Supp. 530, 533 (E.D.Va.1993), the court found that "a corporate defendant cannot be held liable for the tortious acts of a law enforcement officer ... when the acts complained of occurred in the performance of his duty as a public officer." *Marks v. Crawford,* 882 F.Supp. 530, 533 (E.D.Va.1993). Thus, if the officer commits a tort while discharging his duties as a police officer, his employer cannot be held liable for the tort unless the tort was committed at the employer's direction. *Welton v. Georgia Power Co.,* 189 Ga.App. 17, 375 S.E.2d 108, 110 (1988). However, if the employee commits a tort while discharging duties owed to his employer, the employer will be liable for the acts of the officer. *Id.*

Although the Hawaii state courts have yet to specifically address this issue, the court finds the above cited cases persuasive. Accordingly, the court believes that if the Hawaii state courts were to address this issue, they would conclude that when

an employer hires an off-duty police officer, it is not liable for those acts which are committed in carrying out his public duty as a police officer.

In performing the arrest of Otani in this case, Fragiao was clearly not acting within the scope of his employment with Haitsuka. Fragiao was not hired to arrest anyone who committed a crime on Haitsuka's property, nor was he authorized by Haitsuka to arrest anyone who interfered with his job of directing traffic. When Fragiao arrested Otani, it was not for a crime committed against Haitsuka or Haitsuka's property. It was for the crime of harassment, namely Otani's alleged harassment of Fragiao. Based on these facts, the court believes that the Hawaii state courts would agree that Haitsuka cannot be held liable under respondeat superior for the torts committed by Fragiao while he was performing his public duty as a police officer. Accordingly, *the court GRANTS* Haitsuka's motion for summary judgment with respect to Plaintiff's claims for assault and battery, negligence, and infliction of emotional distress.

### 2. *Plaintiff's Claim for Negligent Training and Supervision*

 Under Hawaii law, before a plaintiff can establish a claim for negligent training and/or supervision, the plaintiff must establish that "the employer knew or should have known of the necessity and opportunity for exercising such control." *Abraham v. S.E. Onorato Garages,* 50 Haw. 628, 639, 446 P.2d 821, 826 (1968). The key to any claim for negligent training or supervision is foreseeability. If an employer has not been put on notice of the necessity for exercising a greater degree of control or supervision over a particular employee, the employer cannot be held liable as a matter of law.

 In this case, Plaintiff has not produced any evidence to indicate that Haitsuka had any information regarding Fragiao's prior misconduct on September 21, 1994. Haitsuka did not specifically select

Fragiao to direct traffic at its construction project on September 21, 1994. In his affidavit, Fragiao explains how an individual officer is selected for special duty:

> Private companies which desire special duty officers contact the special duty coordinator at the Police Department and advise the department of the dates for which they need special duty officers. The special duty coordinator then assigns officers who are not scheduled for regular duty on the subject dates.

> Officers are notified one week in advance of a proposed special duty assignment. The special duty coordinator places a notice containing the company's name, required dates and the location in an officer's "pigeon hole". The notice further states that full dress police uniform is to be worn and includes a stenciled reminder that traffic vests, gloves and hard hats should be worn.

> After each assignment, the police officer reports his or her hours to the special duty police coordinator. The special duty coordinator then bills the private companies accordingly.

Affidavit of Manuel Fragiao, p. 2, attached to Defendant Haitsuka's Motion for Summary Judgment.

This is the procedure which was followed in this case. Haitsuka notified the Department of its need for a special duty officer to direct traffic at its construction project on September 21, 1994. Haitsuka did not request Fragiao for the job, rather Fragiao was the next officer in line for special duty. Haitsuka did not instruct Fragiao on how to direct traffic at the construction project. *Id.* at 3. Fragiao had been trained in the direction of traffic at the police academy, and by the time of his special duty assignment, Fragiao "had extensive experience in traffic direction and control." *Id.*

No Haitsuka employee was present at the time of Plaintiff's arrest. According to Fragiao, at that time, all Haitsuka employees were working underground installing sewage lines. Neither Fragiao nor the Department ever informed Haitsuka of the September 21 incident. The first time Haitsuka learned of the incident was when it was served with Plaintiff's First Amended Complaint on July 9, 1997.

Based on these facts, the court finds that there is no evidence in the record to suggest that the September 21, 1994 assault on Plaintiff was foreseeable to Haitsuka. Accordingly, the court GRANTS Haitsuka's motion for summary judgment with respect to Plaintiff's claim for negligent training and supervision.

3. *Plaintiff's Claims for Respondeat Superior and Punitive Damages*

The only remaining claims against Haitsuka are for respondeat superior and punitive damages. However, as neither of these claims are independent causes of action, the court GRANTS Haitsuka's motion for summary judgment as to these remaining claims.

### CONCLUSION

For the reasons stated above, the court GRANTS Defendant County of Hawaii's Motion for Partial Summary Judgment and GRANTS Defendant Haitsuka Brothers, Ltd. Motion for Summary Judgment. As the court has granted both of Defendants' motions, the court DENIES Plaintiff's Motion for Partial Summary Judgment against the County of Hawaii and Haitsuka Brothers, Ltd.

**IT IS SO ORDERED.**