Doris G. **REECE**, Plaintiff,

v.

Kenneth S. **APFEL**, Commissioner of Social Security, Defendant.

No. 98–4162–DES.

United States District Court, D. Kansas.

March 23, 2000.

Lowell C. Paul, Kansas Legal Services, Inc., Topeka, KS, Patrick H. Donahue, The Midland Group, Kansas City, MO, for Doris G. Reece, plaintiff.

Jackie A. Rapstine, Office of United States Attorney, Topeka, KS, for Commissioner of Social Security, Kenneth S. Apfel, defendant.

## *MEMORANDUM AND ORDER*

SAFFELS, District Judge.

This matter is before the court on plaintiff's request seeking reversal of the Social Security Commissioner's denial of disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and supplemental security income based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* The court has reviewed the administrative record and the briefs of both parties. For the following reasons, the plaintiff's request is granted, and this case is reversed and remanded for a determination consistent with this opinion.

## I. PROCEDURAL BACKGROUND

Plaintiff filed an application for disability benefits under Title II of the Social Securi-

ty Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* The alleged onset of disability was November 1, 1994. Her applications were combined and denied initially and again on reconsideration. Plaintiff requested an administrative hearing. On March 29, 1996, an administrative law judge ("ALJ") rendered a decision in which he found that plaintiff was not under a "disability" as defined in the Social Security Act. Plaintiff requested a review of that decision by the Appeals Council. On July 29, 1998, the Appeals Council denied the plaintiff's request for review. The ALJ's decision stands as the final decision of the Commissioner.

## II.   FACTUAL BACKGROUND

Doris Reece was born on September 14, 1963. She is five feet, seven inches tall, weighs 155 pounds, and is right handed. Plaintiff resides in Topeka, Kansas. She has a high school degree and has received certified nurse's training. Plaintiff is also a licensed cosmetologist. From July 1984 through December 1994, plaintiff worked steadily as a certified nurse's assistant, cosmetologist, motel desk clerk and as a laborer at a fence company. She has not engaged in substantial gainful employment since November 1, 1994. Plaintiff has a long and detailed medical history which is highlighted below.

Plaintiff began seeing Dr. Ron Warta, a chiropractor, when she was seventeen for neck and lower back pain. Treatment consisted of spinal manipulation, ultrasound, heat, exercise, and rest, and continued for the next ten years. On June 10, 1990, plaintiff was injured while working as a certified nurses's assistant when she caught a patient who was sliding out of his wheelchair. Although her back hurt, plaintiff returned to her full-time position as a certified nurse and part-time position as a hair dresser. On August 13, 1990, plaintiff was referred to Dr. David Thurston, an orthopedist at the Orthopedic Clinic of Topeka. The initial diagnosis was chronic low back strain. Plaintiff saw Dr.

Thurston frequently throughout the next two years. She continued to work during treatment. On May 29, 1992, Dr. Thurston determined that plaintiff had reached maximal recovery with an eight to nine percent disability level. His final diagnosis was a herniated disc. Plaintiff continued to see Dr. Warta with complaints of headaches and back and neck pain during this time.

From May 1992 to May 1994, plaintiff appears to stay in good health. Plaintiff saw Dr. Warta on September 2, 1992, September 14, 1992, and July 7, 1993, complaining of back pain and upper cervical pains. On November 19, 1993, plaintiff had nasal septoplasty surgery to correct her diagnosed nasal airway obstruction, sinusitis, rhinitis, mouth-breathing, and septal deviation. No complications resulted from the surgery. In May 1994, plaintiff began treatment at the Marian Clinic in Topeka, Kansas.

On May 9, 1994, plaintiff saw Dr. Cotton for dizziness and a cough. The cough persisted for several months. On July 27, 1994, the plaintiff saw Dr. Richard Nabours, who felt she was recovering from viral pneumonia. On November 14, 1994, the plaintiff saw Dr. Nabours complaining of muscular cramping in the epigastric region that went to her waist. Dr. Nabours noted plaintiff had excessive muscular tightness and she had vomited twice. Plaintiff consented to have an upper GI series, and the results were normal. On December 7, 1994, plaintiff continued to complain of pain, and a series of tests were run. The results of the upper GI series, EKG, and chest x-ray were normal. The doctor prescribed Donnatol, Darvocet and Tagamet. By December 19, 1994, plaintiff felt much better but still reported vague pains.

On December 28, 1994, plaintiff was still experiencing pain across her abdomen, and reacted to the slightest stimulation. Dr. Nabours scheduled a consultation appointment with Dr. Spencer, a gastroenterologist, which plaintiff canceled. On January

18, 1995, plaintiff called Dr. Nabours, complaining of stomach and arm pain. Dr. Nabours explained to plaintiff that he could not find a diagnosis despite extensive examination, and he strongly suggested that she consult another physician. On January 20, 1995, Dr. Nabours again told plaintiff she needed to see a physician who could make a diagnosis, and recommended she see Dr. John Rockeffer.

On February 4, 1995, plaintiff went to the Saint Francis Hospital in Topeka complaining of sharp, stabbing abdomen pain. Dr. Gerard Coulon diagnosed pelvic inflammatory disease and prescribed medication. On February 10, 1995, plaintiff went to the Marian Clinic, complaining of stomach pain, both arms were falling asleep, and her arms and legs hurt. Plaintiff told the doctor that she had not seen the recommended consulting physician, Dr. Spencer, because she could not afford him. On February 16, 1995, plaintiff saw Dr. Sundbye. Plaintiff reported symptoms of diffuse myalgia and episodic difficulty voiding, but had a normal exam. Dr. Sundbye ordered TSH and B12 vitamin tests, which results were normal. Plaintiff underwent an EMG study which revealed plaintiff had normal muscle bulk and normal range of motion.

On March 28, 1995, plaintiff saw Dr. Keirnan O'Callaghan complaining of diffuse muscle joint pain and cramping and swelling in her right arm. He prescribed Elavil at bedtime, warm moist packs, and instructed her to stop smoking. On April 25, 1995, plaintiff complained of cramping, muscle pain, and pain in her fingers. Dr. O'Callaghan diagnosed plaintiff with tendinitis in her right arm and "possible fibromyalgia." He prescribed Lodine for the tendinitis, warm moist packs, and increased her Elavil dosage. On May 23, 1995, plaintiff complained of pain in her right shoulder, wrist and elbow, and her fingers. Plaintiff said she stopped taking Elavil because it made her tired. Dr. O'Callaghan noted a good result using the Lodine for tendinitis.

On June 7, 1995, plaintiff saw another doctor at the Marian Clinic for pains in her lower back and the epigastium. Plaintiff said she stopped taking Lodine due to an upset stomach. Plaintiff was diagnosed with fibromyalgia and gastrointestinal distress due to nonsteroidal anti-inflammatory medication. The doctor prescribed Zantac and Tylenol Extra Strength. Plaintiff again saw a doctor on August 22, October 20, 1995, and November 7, 1995.

On November 27, 1995, plaintiff was diagnosed with "probable fibromyalgia." Plaintiff complained that the Elavil caused excessive sedation, and the Lodine caused too much gas. The doctor cut her Elavil dosage in half and re-started Lodine with Cytotec. On November 28, 1995, Dr. O'Callaghan wrote a medical statement for the Kansas Department of Social and Rehabilitation Services. He indicated that the plaintiff was suffering from fibromyalgia, which he characterized as a physical or mental condition which did not prevent but substantially limited employment. Plaintiff was given no restrictions, except those limitations caused by diffuse body pain.

At the February 5, 1996, hearing, plaintiff described her condition. She testified that doctors at the Marian Clinic diagnosed her with fibromyalgia and tendinitis and that exercise would help her diagnosed fibromyalgia. She complained of pain and numbness in her right hand, and also her left hand, but to a lesser degree. The pain lasts from just a couple of minutes to several hours or days, but she lives with a certain level of pain. Plaintiff often has trouble gripping items. She also experiences pain and numbness in her legs, and gets charley horses. Although she feels the need to stretch, it does not seem to help. Plaintiff also testified to general cramping throughout her body.

Plaintiff testified that she experiences sudden fatigue. About five days a week, she must lie down and this occurs at any time of the day. She also suffers from headaches several times a month. She has

migraine headaches that last up to eight days at a time. She also testified that she went to the emergency room as a result of a headache. At the time of the hearing, the only medication she took was Tylenol and Advil.

As to her daily activities, plaintiff testified that she usually gets about four hours of sleep and wakes up early. She is often woken by pain in her arms and legs, and she soaks in the bathtub. Plaintiff can sit thirty minutes before she needs to stand. She can stand for about fifteen to thirty minutes before needing to sit. Plaintiff can walk three blocks and back in about forty-five minutes. Plaintiff testified that she could pick up two gallons of milk. During the day, she reads books and takes short walks. Plaintiff can do housework, but she needs help lifting anything heavy or moving furniture. She also has a hard time doing dishes and vacuuming. Plaintiff can drive her car. She sometimes goes to a local bar to socialize with friends.

In response to the ALJ's questions concerning treatment, the plaintiff testified that she walked and stretched to help the fibromyalgia. At times, this is difficult. Plaintiff is constantly moving around and stretching her legs. Plaintiff got a hard labor job because she thought it would help build her muscles. Although plaintiff was told to see a rheumatologist, she never did because she could not afford it. Plaintiff believes she needs to get one doctor, because of the various medical opinions she receives at the Marian Clinic. Plaintiff said she is upset that she can not work and wants to get help for her disease.

Marian Lumpe, a vocational expert, also testified at plaintiff's hearing. She described plaintiff's work range as between very heavy, semi-skilled for her jobs building fences and nurse's assistance and light, semi-skilled for her job as a motel desk clerk. The ALJ then asked Ms. Lumpe what type of work was available to a hypothetical person with the same age, education, and work experience, and limitations on sitting, standing, and hand movements. Ms. Lumpe testified that such a person could not perform any of plaintiff's past relevant work, but could perform jobs such as cashier, surveillance monitor, and telephone solicitor. However, she testified that if the person had to lie down on an unscheduled basis the person could not perform any of those jobs. If a person had to lie down for one hour a day, Ms. Lumpe stated the job would have to have a sixty minute lunch break.

## III. STANDARD OF REVIEW

Title 42, § 405(g) of the United States Code provides for judicial review of a final decision of the Commissioner of the Social Security Administration (SSA). The reviewing court must determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Substantial evidence is adequate, relevant evidence that a reasonable mind might accept to support a conclusion. *Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir.1991). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir.1994) (citation omitted). "A finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir.1992) (citations omitted). The reviewing court must also determine whether the Commissioner applied the correct legal standards. *Washington*, 37 F.3d at 1439. Reversal is appropriate not only for lack of substantial evidence, but also for cases where the Commissioner uses the wrong legal standards. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.1994). In applying these standards, the court must keep in mind the purpose of the Social Security Act is to ameliorate some of the rigors of life for those who are disabled. *Dvorak v. Celebrezze*, 345 F.2d 894, 897 (10th Cir.1965).

## IV. COMMISSIONER'S DECISION

In the ALJ's March 29, 1996, decision, the ALJ made the following findings:

1. Claimant met the special earnings requirement of the Act on November 1, 1994, the date claimant stated she became unable to work, and continues to do so through the date of this decision.

2. Claimant has not engaged in substantial gainful activity at any time since November 1, 1994.

3. The medical evidence establishes that claimant has degenerative disc disease in the lumber spine; fibromyalgia; a history of left arm surgery in the remote past with no residual neurological impairment; and complaints of headaches of undetermined etiology, but she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. Claimant's testimony as to the severity of her impairments and attending symptoms is found to be no more than partially credible inasmuch as such testimony is inconsistent with opinions and reports from treating and examining physicians, none of whom have found claimant to be disabled on the basis of any impairment or combination of impairments, her lack of any significant treatment regimen, the recommended treatment of exercise and stretching as opposed to any surgical or invasive type of procedure, the lack of any prescriptive pain medication regimen, the lack of any adverse side effect from any medication; the inadequacy of the substantiation as to a medical need to lie down which is contradicted by the treating physician's recommendation that she exercise and stretch as opposed to lie down and for all the other reasons set forth in the Rationale section for this opinion.

5. Claimant has at all times retained a residual functional capacity for a range of light work where she should be afforded the ability to sit and stand optionally throughout the workday and should not be required to do any bilateral repetitive hand motions.

6. Claimant is incapable of performing any of her past relevant work.

7. Claimant has ranged between 31 and 32 years of age which is defined as a "younger" individual.

8. Claimant has a high school education.

9. Based on an exertional capacity for a wide range of light work, and claimant's age, education and work experience, Section 404.1469 and the framework of Rules 202.21 and 201.28, Tables Nos. 2 and 1, Appendix 2, Subpart P, Regulations No.4 indicate that a conclusion of not disabled is appropriate.

10. Although claimant alleges nonexertional pain in multiple anatomical areas, using the above cited Rules as a framework for decisionmaking, there are a significant number of jobs both in the State of Kansas and the national economy which she is nonetheless capable of performing, the numbers and identities of which were specifically set forth by the vocational exhibit at the time of claimant's hearing.

11. Claimant has not been under a "disability" as defined in the Social Security Act, as amended, at any time through the date of this decision.

## V. DISCUSSION

To be eligible for disability insurance benefits, a claimant must establish that she meets the insured status requirements, is under sixty-five years of age, and is under a "disability." *Flint v. Sullivan,* 951 F.2d 264, 267 (10th Cir.1991). To qualify for supplemental security income, the claimant must establish that she is under a disability while the application is pending. 20 C.F.R. §§ 416.330 and 416.335. As defined in the Act, "disability" is the inability to engage in any substantial gainful activity for at least twelve months due to a medically determinable impairment. 42 U.S.C. § 423(d)(1)(A) (1995). The Act provides:

An individual shall be determined to be under a disability only if his physical impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). *See* 20 C.F.R. § 404.1505(a).

The Commissioner has established a five-step evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. *Reyes v. Bowen,* 845 F.2d 242, 243 (10th Cir.1988). Those five steps are as follows:

(1) A person who is working is not disabled.

(2) A person who does not have an impairment or combination of impairments severe enough to limit the ability to do basic work activities is not disabled.

(3) A person whose impairment meets or equals one of the impairments listed in the regulations is conclusively presumed to be disabled.

(4) A person who is able to perform work [he] has done in the past is not disabled.

(5) A person whose impairment precludes performance of past work is disabled unless the [Commissioner] demonstrates that the person can perform other work. Factors to be considered are age, education, past work experience, and residual functional capacity.

20 C.F.R. § 416.920. The claimant has the burden of establishing disability at the first four steps. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.1989). At step five, the burden shifts to the commissioner to show the claimant retains the ability to perform other work which exists in the national economy. *Id.* Although the ALJ determined that plaintiff could not perform her past relevant work, he found that she had the retained functional capacity to perform available light work which allowed her to sit or stand optionally throughout the day, and did not require her to perform bilateral repetitive hand motions.

Plaintiff appeals the ALJ's determination that she is not disabled. First, plaintiff argues that the ALJ improperly discounted her testimony with respect to her pain and fatigue. Second, plaintiff claims the ALJ erred in determining the plaintiff's residual functional capacity. Finally, plaintiff alleges that the ALJ erred in relying on the testimony of the vocational expert.

## A. Plaintiff's Testimony

■ Plaintiff argues that the ALJ improperly discounted her testimony with respect to her pain and fatigue. Although the ALJ must consider plaintiff's subjective complaints, the ALJ does not have to accept them as true. *Underwood v. Bowen,* 807 F.2d 141, 143 (8th Cir.1986); *Arensman v. Apfel,* 40 F.Supp.2d 1249, 1254 (D.Kan.1999). A credibility determination is left to the ALJ as the trier of fact, and the ALJ's credibility findings are traditionally given particular deference. *Williams v. Bowen,* 844 F.2d 748, 755 (10th Cir.1988) (citing *Beavers v. Secretary of Health, Education and Welfare,* 577 F.2d 383, 387 (6th Cir.1978)). The ALJ's credibility findings must be affirmed if they are supported by substantial evidence on the record as a whole. *See Ellison v. Sullivan,* 929 F.2d 534, 537 (10th Cir.1990).

■ Courts have recognized that the pain suffered by those diagnosed with fibromyalgia can be disabling. *See Sarchet,* 78 F.3d at 309; *Ward v. Apfel,* 65 F.Supp.2d 1208 (D.Kan.1999); *Biri v. Apfel,* 4 F.Supp.2d 1276 (D.Kan.1998). The symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity. *Sarchet,* 78 F.3d at 306. Subjective symptoms must be evaluated with due consideration of credibility, motivation, and medical evidence of impairment. *Dvorak,* 345 F.2d at

897. Other factors the court considers in evaluating whether pain is disabling are attempts to find relief from pain, willingness to try treatment, regular contact with a doctor, and daily activities. *Luna v. Bowen*, 834 F.2d 161, 165–66 (10th Cir. 1987).

■ The ALJ found the plaintiff's testimony only partially credible. Plaintiff's allegations of fatigue and pain are not supported by any of her treating physicians. None of plaintiff's physicians determined that she was disabled or recommended she avoid work for any significant period of time. A treating physician's opinion is entitled to significant weight. *Ellison*, 929 F.2d at 537. Plaintiff's treating physician, Dr. O'Callaghan, found that while plaintiff suffered from fibromyalgia that limited her ability to work, it did not prevent her from working, except to the extent of diffuse body pain. He did not set any specific restrictions. In addition, Dr. O'Callaghan found that the plaintiff had a full range of motion. His recommended remedial measures were conservative: prescribing medication and instructing plaintiff to stop smoking and to use a warm moist pack.

Plaintiff's desire to seek relief from her pain also does not corroborate her complaints. Although she had been prescribed various medications, she repeatedly stopped taking them for various reasons without first consulting a physician. At the time of the hearing, plaintiff was only taking Tylenol and Advil. The fact that plaintiff took over the counter medication rather than prescription medication to deal with her pain supports the ALJ's decision that her pain was not disabling. *See Noble v. Callahan*, 978 F.Supp. 980, 985–86 (D.Kan.1997). Plaintiff also refused to see recommended doctors, claiming she could not afford them. However, plaintiff admitted that she did not qualify for Medicaid, and she presented no evidence that she was denied the recommended medical care because of her finances. Plaintiff's failure to seek recommended medical care indicates that her pain and fatigue were not as severe as she alleges. *Id.* at 986.

Plaintiff's description of her daily activities is also inconsistent with finding a disability. She can shop, cook, clean, do laundry, read, watch television, walk, drive, and socialize with friends. She can play Nintendo on days her hands felt better. Although plaintiff is limited as to the extent of these activities, the plaintiff's description of her activities supports the ALJ's finding that she is not disabled.

The ALJ's finding that the plaintiff is only partially credible is supported by the record. There are legitimate reasons to discredit the plaintiff's testimony. The determination of credibility is within the province of the ALJ and should not be disturbed when supported by substantial evidence. *Hamilton v. Secretary of Health & Human Servs.*, 961 F.2d 1495, 1499 (10th Cir.1992). There is substantial evidence to support the ALJ's decision to reject plaintiff's testimony.

■ Plaintiff argues that the ALJ should have ordered a consultative examination by a rheumatologist. An ALJ must order a consultative exam when there is a "reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir.1997). The court does not believe such an examination is necessary as the record contained sufficient evidence for the ALJ to make a disability determination.

### B. Plaintiff's Residual Functional Capacity

Plaintiff claims the ALJ erred in determining the plaintiff's residual functional capacity ("RFC"). First, plaintiff claims the ALJ did not make a function-by-function assessment of her ability to do work-related activities, considering all of plaintiff's impairments and evidence. Second, even if his assessment of ability was cor-

rect, the RFC assigned is misleading and suggests a greater capacity for work activities than plaintiff actually possesses.

■ The ALJ found that the plaintiff could perform light work with a sit/stand option and no bilateral repetitive hand movements. Plaintiff argues that the ALJ did not consider the "uncontroverted evidence" regarding her headaches, need to lie down, and inability to grasp objects. However, the hypothetical need not include every allegation by a plaintiff. The ALJ is to base the hypothetical on his findings that are substantially supported by the record as a whole. *Brown v. Bowen,* 801 F.2d 361, 363 (10th Cir.1986). The ALJ's hypothetical and assessment of plaintiff's RFC is supported by substantial evidence.

The court must now consider plaintiff's argument that even if the plaintiff has the limitations found by the ALJ, the RFC assigned to plaintiff is misleading and suggests a greater capacity for work activities. The two limitations found by the ALJ include light duty work with a sit/stand option and no bilateral repetitive hand motions. The plaintiff cites to the Social Security Regulations discussion on the effect of such limitations on the ability of plaintiff to do light and sedentary work.

Social Security regulation 96–9p provides in relevant part:

Alternate sitting and standing: An individual may need to alternate the required sitting of sedentary work by standing ... periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record.... The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocation resource in order to

determine whether the individual is able to make an adjustment to other work. The regulation also provides:

Most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity. Fine movements of small objects require use of the fingers; e.g., to pick or pinch. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.

Any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base. For example, example 1 in section 201.00(h) of appendix 2, describes an individual who has an impairment that prevents the performance of any sedentary occupations that require bilateral manual dexterity (i.e., "limits the individual to sedentary jobs which do not require bilateral manual dexterity").

The regulations recognize that a person with plaintiff's impairments has a significantly eroded occupational base. The regulations suggest that if the occupational base for light duty is significantly eroded, the ALJ may properly consult a vocational expert to determine if there is substantial gainful work within the national economy. The vocational expert was properly consulted and gave her opinion as to what jobs the plaintiff could perform with both limitations.

### C. Vocational Expert's Testimony

■ Plaintiff claims the ALJ erred in relying on the testimony of the vocational expert, Marianee Lumpee. The ALJ adopted Ms. Lumpee's expert opinion and found that plaintiff could perform jobs such as cashier, telephone solicitor, or surveillance system monitor. All three jobs have a sit/stand option. However, two of the jobs do not take into consideration the restriction of no bilateral repetitive hand movements. The cashier position requires constant reaching, handling and fingering.

U.S. Dep't. Of Labor, SELECTED CHARAC-TERISTICS OF OCCUPATIONS DEFINED IN THE REVISED DICTIONARY OF OCCUPATIONAL TI-TLES (1993) at 333. The position of telephone solicitor requires fingering, which this court believes to be within the restriction on bilateral hand movements. *Id.* at 355. The surveillance system monitor position appears to be the only job within plaintiff's RFC.

It is unclear that the ALJ would have reached the same conclusion if the only job available was surveillance system monitor. Therefore, the court reverses and remands this case for a determination of whether there is substantial gainful work within the plaintiff's RFC. To make this determination, the ALJ needs to consult a vocational expert and evaluate the expert's opinion to make sure the available jobs are within plaintiff's RFC.

## VI. CONCLUSION

For the reasons stated above, the court finds that the ALJ properly accessed plaintiff's complaints of pain. The ALJ correctly determined plaintiff's RFC. The ALJ found that plaintiff could perform available work which was based on two jobs that plaintiff was not capable of performing within her RFC. Therefore, the decision of the ALJ is reversed, and the case is remanded for a determination of whether there is substantial gainful work available to the plaintiff. To make this determination, the ALJ needs to consult a vocational expert.

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff's request for reversal is granted and that this case is reversed and remanded to the Commissioner for a determination consistent with this opinion.