Johnny R. BATES, Plaintiff,

v.

Jo Anne B. BARNHART,[1]
Commissioner of Social
Security, Defendant.

CIVIL ACTION No. 00–2408–GTV.

United States District Court,
D. Kansas.

Aug. 23, 2002.

---

1. Because Jo Anne B. Barnhart became the Acting Commissioner of Social Security on November 9, 2001, she is substituted for Larry G. Massanari as Defendant to this lawsuit. See 42 U.S.C. § 405(g); Fed.R.Civ.P. 25(d).

Teresa M. Meagher, Law Office of Teresa M. Meagher, Leawood, KS, for Plaintiff.

Melanie D. Caro, Robert A. Olsen, Office of United States Attorney, Kansas City, KS, for Defendant.

## MEMORANDUM AND ORDER

VanBEBBER, Senior District Judge.

Plaintiff Johnny R. Bates, brings this action pursuant to 42 U.S.C. § 405(g) and D. Kan. Rule 83.7, seeking judicial review of the decision of the Commissioner of Social Security ("Commissioner") to deny his application for a period of disability and disability insurance benefits under Title II of the Social Security Act. For the reasons set forth below, the court reverses the Commissioner's decision in part, affirms it in part, and remands the case for further consideration in accordance with this opinion.

### I.  Procedural Background

On May 14, 1997, Plaintiff filed his application for a period of disability and disability insurance benefits, claiming disability since February 19, 1996. The application was denied both initially and upon recon-

sideration. At Plaintiff's request, an administrative law judge ("ALJ") held a hearing on September 1, 1998, at which Plaintiff and his counsel were present. On October 28, 1998, the ALJ rendered a decision in which he determined that Plaintiff was not under a "disability" as defined by the Social Security Act. After the ALJ's unfavorable decision, Plaintiff requested review by the Appeals Council. The Appeals Council denied Plaintiff's request for review on July 14, 2000, rendering the ALJ's decision the final decision of the Commissioner.

## II. Standard of Review

■ The Commissioner's findings are binding on this court if supported by substantial evidence. 42 U.S.C. § 405(g); *Dixon v. Heckler*, 811 F.2d 506, 508 (10th Cir.1987). The court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record and whether the Commissioner properly applied relevant legal standards. *Marshall v. Chater*, 75 F.3d 1421, 1425 (10th Cir.1996) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir.1994)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Castellano*, 26 F.3d at 1028 (citations and internal quotation marks omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1500 (10th Cir.1992).

## III. Factual Background

Plaintiff seeks Social Security benefits for the time period beginning February 19, 1996 and ending July 27, 2000. Based on a later-filed application, the Commissioner found Plaintiff disabled as of July 28, 2000.

Plaintiff alleges he is disabled because of a neck injury causing neck and shoulder pain and left arm discomfort. Plaintiff injured his neck while lifting heavy bags at work on February 19, 1996. After conservative treatment failed to ease his pain, he underwent surgery on May 31, 1996. The surgery relieved pain in his left arm but failed to alleviate his neck pain. He continues to experience numbness in his left arm. Plaintiff stopped receiving medical treatment after the surgery but has continued taking over-the-counter Tylenol on an as-needed basis.

Plaintiff also alleges that he is unable to sit or stand for prolonged periods of time because of pain in his lower back and hips. His back and hip pain started after an accident in 1989.

## IV. ALJ's Findings

In his October 28, 1998 decision, the ALJ made the following findings:

● Claimant has not engaged in substantial gainful activity at any time pertinent herein. He received $10,369.21 in 1996 and $733.92 in 1997 in disability payments through his employer. Claimant testified he filed a worker's compensation claim in 1995 and received $40,000.00 in a lump sum payment. Claimant testified he currently receives long term disability payments from his employer in the amount of $940.00 a month.

● The medical evidence establishes that claimant has cervical spondylosis; cervical spinal stenosis; status post cervical discectomy/fusion (May, 1996); degenerative disc disease (L5–S1) and osteoarthritis, facet joint. At least one of claimant's impairments impose more than a minimal limitation on claimant's ability to function in the workplace and claimant therefore has a "severe" impairment as that term is defined in the [Social Security] Act.

● Claimant's impairments, considered singularly or in combination, do not meet or equal the severity require-

ments of any impairment described in the Listing of Impairments.

- Claimant's testimony and allegations of total disability are found not credible for the reasons discussed in the Evaluation of the Evidence section of this decision.
- Claimant's residual functional capacity allows him to engage in light work activity with the following additional limitations and restrictions: cannot work or lift overhead with neck in an extended position; cannot perform physically strenuous job tasks; and work position must allow for head to be above and supported by the trunk.
- Claimant has past relevant work as a pipe wrapping machine operator, fork lift operator and machine packager.
- Claimant was born on October 8, 1946, and is currently 52 years old, which is defined as "closely approaching advanced age[,]" and has a high school education.
- There are a significant number of light unskilled jobs existing in the local or national economies which claimant can perform.
- Considering claimant's residual functional capacity, age, education and past relevant work experience, the framework of Rules 202.21 and 202.14 of Table No. 2, Appendix 2, Subpart P, Regulations No. 4, justify a conclusion of "not disabled" for the periods February 19, 1996 through October 8, 1996 and from October 9, 1996 through the date of this decision.
- Claimant has not been under a "disability" as defined in the Social Security Act, as amended, at any time pertinent herein.

## V. Discussion

A five-step process is employed to determine whether a Social Security claimant is disabled:

Step one determines whether the claimant is engaged in "substantial gainful activity." If he is, disability benefits are denied. [20 C.F.R.] §§ 404.1520(b), 416.920(b). If he is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments .... §§ 404.1520(c), 416.920(c).... If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d), 416.920(d); 20 C.F.R. pt. 404, subpt. P, App. 1 (1986). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. §§ 404.1520(e), 416.920(e). If the claimant cannot perform this work, the fifth and final step of the process determines whether he is able to perform other work in the national economy in view of his age, education, and work experience. The claimant is entitled to disability benefits only if he is not able to perform other work. §§ 404.1520(f), 416.920(f).

*Bowen v. Yuckert*, 482 U.S. 137, 140–42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

After finding at steps one and two that Plaintiff was not engaged in "substantial gainful activity" but did have a "medically

severe impairment," the ALJ determined at step three that Plaintiff did not have any impairments that met or equaled the severity of any listed impairment. At steps four and five, the ALJ determined that Plaintiff could not return to his past relevant work, but that he could, despite his impairments, perform other jobs existing in significant numbers in the local or national economies. The ALJ reached this conclusion after presenting a vocational expert with the following hypothetical question:

> Here we have a 51 year old male with a twelfth grade education. Having relevant past work experience per this record and additionally having the following work restrictions and impairments: he's limited to light work activity; cannot work or lift overhead with his neck in the extended position; he cannot perform physically strenuous job tasks; and work positions must allow for his head to be above and supported by the trunk of his body at all times, in other words, any positioning that would get the head below the trunk of the body, would not be permissible.... Is there ... any other work, even in the unskilled entry type work, [that] such a person could perform?

In reply to the ALJ's question, the vocational expert stated that Plaintiff could not perform his past relevant work, but that he could perform several other jobs existing in significant numbers in both the local and national economies. Based on this statement, the ALJ concluded that Plaintiff was not under a "disability" as defined by the Social Security Act.

Plaintiff urges the court to reverse the Commissioner's decision because it is not supported by substantial evidence and was not made according to applicable law. Specifically, Plaintiff alleges that the ALJ erred in: (1) failing to explain his step three finding that Plaintiff did not meet or medically equal any listed impairment; (2)

failing to give sufficient weight to the findings and opinions of Dr. Pazell, a consulting physician; (3) improperly assessing Plaintiff's credibility; and (4) finding that Plaintiff could perform other light work. The court agrees that the ALJ failed to properly explain his step three finding but rejects Plaintiff's other arguments.

## A. The ALJ's Step Three Explanation

At step three of his five-step analysis, the ALJ declined to conclusively presume Plaintiff disabled. The ALJ stated in his opinion, "Claimant's impairments, considered singularly or in combination, do not meet or equal the severity requirements of any impairment described in the Listing of Impairments found in Part A, Appendix 1, Subpart P, Regulations No. 4." He then discussed the evidence in the case.

The problem with the ALJ's approach is two-fold. First, he did not specify what "listed impairment" Plaintiff's impairments failed to meet or equal. Second, he discussed all of the evidence at once; the court is unable to determine on what evidence the ALJ based his step three finding and on what evidence the ALJ based his findings at steps four and five.

The ALJ should have identified the relevant listed impairment and compared Plaintiff's alleged impairments to it. See *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.1996) ("[T]he ALJ did not discuss the evidence or his reasons for determining that appellant was not disabled at step three, or even identify the relevant Listing or Listings.... Such a bare conclusion is beyond meaningful judicial review."); *Bolan v. Barnhart*, 212 F.Supp.2d 1248, 1257–58 (D.Kan.2002) (citing *Clifton*, 79 F.3d at 1009). "[T]he step three analysis requires a comparison of medical evidence regarding symptoms, signs, and laboratory findings with the listed impairment sought to be established or the listed impairment most similar to the claimant's." *Larson v.*

*Chater*, 1996 WL 709848, at \*1, 103 F.3d 144 (10th Cir.1996). Absent reference to a specific listing or a comparison of the evidence to that listing, the court is unable to meaningfully review the ALJ's decision. *Bolan*, at 1257–58 (citing *Clifton*, 79 F.3d at 1009).

■ The ALJ also should have clearly indicated upon what evidence he was basing his step three determination. He discussed all of the evidence at once, including the medical evidence and the evidence he used to make his credibility assessments. Although the ALJ may make credibility assessments at steps four and five, determinations at step three must be made purely on the medical evidence. *Larson*, at 144 ("The determination of medical equivalency at step three must be based solely on medical evidence.... Therefore, the ALJ's consideration of Larson's credibility was in error."); *Hayes v. Callahan*, 976 F.Supp. 1391, 1394 (D.Kan. 1997); 20 C.F.R. § 404.1526(b) ("Medical equivalence must be based on medical findings. We will always base our decision about whether your impairment(s) is medically equal to a listed impairment on medical evidence only."). Absent an assurance that the ALJ based his decision solely on the medical evidence, the court cannot conclude that the ALJ's step three analysis was proper.

■ In sum, the court is unable to determine whether the ALJ properly applied the relevant legal standards in his step three analysis. Failure to provide the court with an adequate basis for reviewing application of the relevant legal standards is grounds for reversal. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The Commissioner's decision is reversed and remanded for the limited purpose of allowing the ALJ to fully explain his findings at step three.

### B.  Dr. Pazell's Opinion

The ALJ properly weighed the opinion of Dr. Pazell. The record contains reports of three doctors: Dr. Holladay, Dr. Pazell, and Dr. Varghese. Dr. Holladay, a neurologist, was Plaintiff's treating physician. He began treating Plaintiff in October 1995. He performed an anterior cervical discectomy with a bone graft on Plaintiff on May 31, 1996. Dr. Holladay opined on August 12, 1996 that Plaintiff had reached maximum medical improvement and that his permanent partial disability was nine percent of the whole person. On September 10, 1996, Dr. Holladay permanently restricted Plaintiff from repetitively lifting more than twenty pounds and from ever lifting over thirty-five pounds. He also found that Plaintiff could not work in positions where his head was not supported by his trunk. Dr. Holladay released Plaintiff from his care at that time.

Dr. Pazell, an orthopedic surgeon, evaluated Plaintiff on January 7, 1997, in connection with Plaintiff's claim for workers' compensation benefits. Plaintiff was referred to Dr. Pazell by his attorney. Dr. Pazell physically examined Plaintiff and reviewed Plaintiff's medical records. Dr. Pazell found Plaintiff to have a partial disability of fifty-eight percent of the whole person, and opined that Plaintiff was limited to a sedentary occupation.

Plaintiff saw Dr. Varghese, a professor in the University of Kansas Medical Center's Department of Rehabilitative Medicine, on June 30, 1997. Plaintiff consulted Dr. Varghese at the request of the Social Security Administration. Dr. Varghese physically examined Plaintiff, reviewed Dr. Pazell's report, and x-rayed Plaintiff's cervical spine. He issued a report on July 6, 1997, stating that Plaintiff would have difficulty engaging in work related to lifting, carrying, overhead activities, and perhaps walking. He concluded that no objective

evidence justified limiting Plaintiff in sitting, standing, handling objects, hearing, speaking, and traveling.

■ In weighing each physician's opinion, the ALJ noted:

> Evidence shows Dr. Pazell restricted claimant much more than the neurological specialist [(Dr. Holladay)] and the consultative examination specialist [(Dr. Varghese)], but the undersigned notes that this was a referral evaluation from claimant's attorney other than a treating source. After reviewing the evidence of record, the undersigned concludes that Dr. Pazell's conclusions are inconsistent with the substantial medical evidence of record and more weight is given to the neurological source and consultative examining source.

"A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record." *Walker v. Apfel*, No. 97–1189–MLB, 1998 WL 928672, at *4 (D.Kan. Sept. 18, 1998) (citing Castellano, 26 F.3d at 1029). If a treating physician's opinion is inconsistent with other evidence, the ALJ must determine whether the other evidence outweighs the treating physician's opinion. *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir.1995). In weighing *any* medical opinion (including the opinion of a consulting physician), the ALJ must consider the following factors: (1) the duration of the treatment relationship and the frequency of visits; (2) the character and scope of the treatment relationship; (3) the amount of relevant evidence supporting the physician's opinion; (4) how consistent that opinion is with the rest of the record; (5) whether the physician is a specialist; and (6) other factors tending to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6).

■ Dr. Holladay was Plaintiff's treating physician. His opinion is afforded controlling weight unless unsupported and contradicted by other substantial evidence. The court finds support for Dr. Holladay's opinion in the record. Only Dr. Pazell's findings contradict Dr. Holladay's, and findings from a one-time consulting physician do not constitute substantial evidence. *Hintz v. Chater*, 913 F.Supp. 1486, 1492 (D.Kan.1996). Dr. Holladay treated Plaintiff for nearly a year. Dr. Pazell saw Plaintiff once, at the direction of Plaintiff's attorney. Plaintiff did not seek treatment from Dr. Pazell; he saw him in connection with a workers' compensation claim. Furthermore, other evidence in the record supports Dr. Holladay's findings, including Dr. Varghese's report.

Plaintiff argues that Dr. Pazell's opinion is not inconsistent with the other medical evidence of record. The court disagrees. Dr. Pazell placed more stringent limits on Plaintiff's activities than either Dr. Holladay or Dr. Varghese did. Dr. Pazell specifically restricted Plaintiff to sedentary work. Neither Dr. Holladay nor Dr. Varghese limited Plaintiff to activities constituting "sedentary work." Moreover, Dr. Pazell's limits were inconsistent with the activities that Plaintiff testified he engaged in, such as mowing the lawn, helping with some household chores, and driving an automobile, usually with his wife accompanying him.

■ After reviewing the record, the court concludes that the ALJ's decision to give more weight to Dr. Holladay's and Dr. Varghese's findings is supported by substantial evidence.

### C. Plaintiff's Credibility

The ALJ also did not err in finding Plaintiff's subjective complaints of disabl-

ing pain not credible. Plaintiff argues that the Commissioner's decision should be reversed because the ALJ made the following errors: (1) he improperly considered that Plaintiff worked after a back injury in 1989, yet failed to mention Plaintiff's overall good work history; (2) he relied on the fact that Plaintiff did not seek medical treatment when Plaintiff testified that he could not afford treatment; and (3) he mischaracterized· some of the evidence. The court disagrees.

■ Because the ALJ is " 'optimally positioned to observe and assess witness credibility,'" *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir.1996) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir.1991)), the court "may overturn such a credibility determination only when there is a conspicuous absence of credible evidence to support it," *Patterson v. Apfel*, 62 F.Supp.2d 1212, 1217 (D.Kan.1999) (citing *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir.1992)). Credibility determinations made by the ALJ are generally treated as binding upon review. *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir.1990).

■ When evaluating the credibility of a claimant's complaints of disabling pain, the ALJ should ask the following questions: "(1) whether [the] [c]laimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and [the][c]laimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, [the][c]laimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992) (citing *Luna v. Bowen*, 834 F.2d 161, 163–64 (10th Cir.1987)). In deciding whether the claimant's pain is disabling, the ALJ should consider the following factors:

the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir.1988).

■ Assuming that Plaintiff established that he has impairments with a "loose nexus" to his allegations of pain, the court still concludes that the ALJ did not err in finding Plaintiff's complaints of disabling pain not credible. The ALJ detailed his reasons for discrediting Plaintiff's subjective complaints. Plaintiff testified that he was unable to sit or stand for eight hours a day, largely because of lower back pain from an injury in 1989. Plaintiff continued to work after that injury. Evidence of employment while allegedly disabled is probative of a plaintiff's ability to work. *Williams v. Chater*, 923 F.Supp. 1373, 1379 (D.Kan.1996) (citations omitted); 20 C.F.R. § 404.1571.

■ The ALJ did not mention Plaintiff's good work history in his analysis. Plaintiff alleges that this omission constitutes reversible error. The court disagrees. The ALJ need not discuss every relevant factor in evaluating pain testimony. *Bridgeford v. Chater*, 922 F.Supp. 449, 459 (D.Kan.1995).

Next, the ALJ emphasized the fact that Plaintiff "has had no treatment and no prescriptive pain medications because he alleges he has no insurance and cannot afford treatment, yet he has a $100.00 a month smoking habit. It is simply inconsistent that someone with the pain he al-

leges would not seek some minimal medical relief and makes claimant's credibility questionable." The ALJ also stated, "By claimant's own admission his only medication is over-the-counter Tylenol used to control his pain which is inconsistent with disabling pain." As noted above, levels of medication and the extent of attempts to obtain relief are both valid considerations in evaluating Plaintiff's subjective complaints of disabling pain. *Huston*, 838 F.2d at 1132; *Reece v. Apfel*, 92 F.Supp.2d 1174, 1181 (D.Kan.2000) (citing *Noble v. Callahan*, 978 F.Supp. 980, 985–86 (D.Kan. 1997)) ("The fact that plaintiff took over the counter medication rather than prescription medication to deal with her pain supports the ALJ's decision that her pain was not disabling.").

Plaintiff alleges that the ALJ was required to consider the factors set forth in *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir.1987) before judging Plaintiff's credibility based on whether Plaintiff sought medical care. The Tenth Circuit recently held in *Qualls v. Apfel* that analysis of the Frey factors in this situation is unnecessary:

> Plaintiff's reliance on our opinion in Frey is misplaced, because Frey concerned the circumstances under which an ALJ may deny benefits because a claimant has refused to follow prescribed treatment. The ALJ here did not purport to deny plaintiff benefits on the ground that he failed to follow prescribed treatment. Rather, the ALJ properly considered what attempts plaintiff made to relieve his pain—including whether he took pain medication—in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling.

206 F.3d 1368, 1372 (10th Cir.2000) (internal citations omitted).

Several courts have sustained an ALJ's credibility findings when a claimant alleged he experienced disabling pain, yet failed to procure medical care. *Sias v. Sec'y of Health and Human Servs.*, 861 F.2d 475, 477 (6th Cir.1988) ("In spite of the life-threatening nature of his condition, the claimant admits he has not followed the instructions of his physician to wear support hose: '[y]ou're looking at roughly close to a hundred dollars,' he testified, and '[a] pair of those support hose lasts approximately two to three months.' The claimant has found it possible to buy two packs of cigarettes a day, however."); *McKenney v. Apfel*, 38 F.Supp.2d 1249, 1256 (D.Kan.1999) ("McKenney did not fill the prescriptions, claiming he did not have the funds to do so. There is no indication McKenney ever tried to apply for aid in order to obtain these prescriptions."); *Jacobs v. Chater*, 956 F.Supp. 1560, 1567–68 (D.Colo.1997) ("[I]nability to pay for treatment does not necessarily preclude an ALJ from considering the failure to seek medical attention in credibility determinations, especially where the claimant could apparently afford beer and cigarettes.").

Here, Plaintiff has not seen a physician for treatment since Dr. Holladay released him in September 1996. His only medication is over-the-counter Tylenol, which supports a finding that his pain may not be as severe as he claims. *Reece*, 92 F.Supp.2d at 1181 (citing *Noble*, 978 F.Supp. at 985–86). He states that he cannot afford treatment or medication, yet the ALJ explored his financial resources and found that he had several assets at his disposal. The record supports a finding that Plaintiff's testimony regarding his assets and his smoking habit is inconsistent with his claim that he cannot afford medical treatment.

■ Finally, Plaintiff claims that the ALJ mischaracterized some of the evidence, rendering his findings unreliable. Plaintiff focuses on the ALJ's statement

that "no physician has stated claimant is totally disabled" and his statement that Dr. Varghese found that Plaintiff was restricted to light work. Plaintiff alleges that neither statement is supported by the record.

Plaintiff first points out that Dr. Pazell found Plaintiff fifty-eight percent impaired. Plaintiff is correct. But whether this finding is misrepresented by the ALJ's statement that no physician found Plaintiff "totally disabled" is immaterial. The ALJ explained why he discredited Dr. Pazell's findings. Further, it is the ALJ's duty to determine whether a claimant is disabled under the Social Security Act, not the physicians'.

The ALJ's statement that Dr. Varghese limited him to light work also does not constitute reversible error. Dr. Varghese may not have labeled his limitations in terms of "light work" or "sedentary work," but the activities he opined Plaintiff could participate in were not inconsistent with a light exertional range of work.

The court concludes that there is not a "conspicuous absence of credible evidence" to support the ALJ's finding that Plaintiff's subjective complaints of disabling pain were exaggerated. *Patterson,* 62 F.Supp.2d at 1217 (citation omitted). The ALJ need not revisit this issue on remand.

### D. Plaintiff's Ability to Perform Other Light Work

Plaintiff argues that the ALJ erred in determining that Plaintiff retained the ability to perform light work. First, Plaintiff submits that the ALJ's use of the term "physically strenuous job tasks" in his hypothetical to the vocational expert was nondescriptive and did not help the expert make an accurate assessment of Plaintiff's ability to work. Second, Plaintiff argues that the ALJ failed to perform a function-by-function assessment before concluding that Plaintiff could do light work. Finally, Plaintiff argues that the vocational expert,

not the ALJ, should have determined the level of work, if any, that Plaintiff could perform. The court rejects each of these arguments.

■ When the ALJ presented his hypothetical to the vocational expert, he stated that Plaintiff was limited to light work activity, could not work or lift overhead, could not perform "physically strenuous job tasks," and could not work in positions where his head was not supported by the trunk of his body. Even without the restriction from physically strenuous job tasks, the hypothetical included all of the medical restrictions the ALJ found credible. The term "physically strenuous job tasks" was merely superfluous, and, if anything, may have caused the vocational expert to identify *fewer* jobs that Plaintiff could handle. There is no error in the ALJ's hypothetical.

■ The ALJ did perform a function-by-function assessment, albeit in a circuitous manner. The ALJ accepted the findings of Dr. Holladay and Dr. Varghese. Dr. Holladay found that Plaintiff could not lift more than twenty pounds repetitively and could not ever lift more than thirty-five pounds. He also found that Plaintiff could not work lifting over his head or in positions where his head was not supported by his trunk. Dr. Varghese found that Plaintiff would have difficulty engaging in activities related to lifting, carrying, overhead activities, and perhaps walking. Dr. Varghese found no objective evidence to support any limits on Plaintiff's sitting, standing, handling objects, hearing, speaking, and traveling. Utilizing these limits, the ALJ concluded that Plaintiff could perform limited light work activity. While he may not have completed his function-by-function assessment within the same paragraph as his conclusion that Plaintiff could do light work, the decision as a whole

indicates that the ALJ engaged in the proper analysis.

Plaintiff also argues that the ALJ's function-by-function assessment and hypothetical should have referenced Plaintiff's complaints of numbness in his left arm and its limiting effect on Plaintiff's activities. The ALJ explained why he discounted some of Plaintiff's complaints. Only Dr. Pazell's opinion supports Plaintiff's left arm complaints. Further, the court notes that Plaintiff is right-handed and his activities demonstrate bilateral use of his hands. The ALJ did not err in failing to discuss Plaintiff's complaints of numbness in his left arm.

Finally, the ALJ, not the vocational expert, is responsible for assigning an appropriate work level to Plaintiff. *Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir.2000) (citing 20 C.F.R. § 416.946). The out-of-circuit cases Plaintiff cites to the contrary are inapposite.

IT IS, THEREFORE, BY THE COURT ORDERED that the decision of the Commissioner is reversed in part and affirmed in part. The case is remanded to the ALJ for the limited purpose of explaining his findings at step three.

The case is closed.

**IT IS SO ORDERED.**